2007 UT 4

**SALT LAKE CITY CORPORATION,**
Petitioner,

v.

**LABOR COMMISSION and Michelle
S. Ross, Respondents.**

No. 20050774.

Supreme Court of Utah.

Jan. 12, 2007.

Thomas C. Sturdy, Kristy L. Bertelsen, Salt Lake City, for petitioner.

Alan L. Hennebold, Salt Lake City, for respondent Labor Commission.

Gary E. Atkin, Marsha Atkin, Salt Lake City, for respondent Ross.

NEHRING, Justice:

¶ 1 The law uses the "going and coming" rule to determine when a person acquires and abandons her status as an employee at the beginning and end of the workday. If an untoward event, typically an accident of some kind, befalls an employee who is "just" coming or going from the workplace, it is of no legal consequence to the employer.

¶ 2 However, we must ask how much more than "just" coming and going is required before the reach of the law grasps an employer whose employee is in transit. As the legal history of the automobile accident involving Salt Lake City police officer Michelle Ross illustrates, our answer to the question affects directly the legal rights and responsibilities of the employee, employer, and third parties.

¶ 3 This is the second time this court has been called upon to review the application of the going and coming rule to Ms. Ross's accident. In *Ahlstrom v. Salt Lake City Corp.*, 2003 UT 4, 73 P.3d 315, we held that the district court had properly applied the going and coming rule when it determined that at the time of the accident Ms. Ross was not employed by Salt Lake City to a degree that would render the City vicariously liable for her negligence.

¶ 4 Now, we confront the question of whether the appeals board of the Utah Labor Commission properly applied the going and coming rule when it affirmed the ruling of an administrative law judge (ALJ) that Ms. Ross was entitled to receive workers' compensation benefits because the accident arose out of and in the course of her employment. As we will explain, the application of the going and coming rule to a single event may result in treating a person as an employee for the purpose of establishing eligibility for

workers' compensation benefits while withholding employee status for the purpose of making the employer liable to third persons. We hold that the going and coming rule does not bar Ms. Ross from receiving workers' compensation benefits, and consequently, we affirm the Commission's award of workers' compensation benefits to Ms. Ross.

## BACKGROUND

¶ 5 At the time her automobile accident occurred, Ms. Ross was a Field Training Officer (FTO) for the Salt Lake City police department. She was returning to her home in Tooele, Utah, from an FTO meeting she had attended while off duty. She drove a marked patrol car. Her infant son was a passenger.

¶ 6 Ms. Ross was permitted to drive the patrol car as a participant in the police department's "Take Home Car Program." Salt Lake City implemented the program to achieve several objectives: (1) to make more officers available for immediate response, (2) to improve the care of city-owned patrol cars, and (3) to increase Salt Lake City's police presence in the community.

¶ 7 Salt Lake City imposed several restrictions and requirements on participating officers. Officers were required to keep their cars clean and well maintained. They were required to carry a service gun, police radio, identification, flashlight, ticket book, report forms, and flares and wear appropriate attire in the vehicle at all times. Even when off duty, officers were required to monitor police radio and, if necessary, respond to emergency calls. While officers were permitted to carry civilian passengers under some circumstances, passengers were not permitted to accompany officers when they responded to emergencies or potentially dangerous calls.

¶ 8 The program imposed additional requirements on participating officers who, like Ms. Ross, lived outside Salt Lake County. Her off-duty use of her patrol car was limited to commuting between work and home, and she was required to pay Salt Lake City $34.62 every two weeks for her travel outside Salt Lake County.

¶ 9 On February 24, 2000, Ms. Ross drove her patrol car, accompanied by her son, from Tooele to Salt Lake City, attended the FTO meeting, and then set out for home. On the way, Ms. Ross fueled her patrol car at the Salt Lake City gas pump and proceeded to Tooele. As required, Ms. Ross had her police radio on during her commute home, although radio reception degraded as she entered Tooele County. On Highway 36 in Tooele County, her car crossed the center line and hit several vehicles traveling in the opposite direction. Ms. Ross injured her neck in the accident.

¶ 10 Chad and Stacy Ahlstrom occupied one of the automobiles that Ms. Ross struck. The Ahlstroms sued Ms. Ross and Salt Lake City Corporation for negligence. We affirmed the summary dismissal of Salt Lake City in Ahlstrom v. Salt Lake City Corp., 2003 UT 4, ¶ 18, 73 P.3d 315.

¶ 11 Ms. Ross made a claim for workers' compensation benefits based on the injuries she sustained in the accident. Salt Lake City resisted her claim. The City contended that Ms. Ross was not injured in the course of her employment under the statutory requirements set out in Utah Code section 34A-2-401 and was therefore ineligible for workers' compensation benefits. An ALJ rejected Salt Lake City's claim. He determined that the coming and going rule did not disqualify Ms. Ross from receiving workers' compensation benefits.

¶ 12 The City sought review of the ALJ's order before the appeals board of the Utah Labor Commission. The appeals board issued an order denying review and affirmed the ALJ's ruling. The City then brought this appeal.

## STANDARD OF REVIEW

¶ 13 We review the legal determinations of the Labor Commission Appeals Board under a correction-of-error standard, ceding the board no deference as appellate courts have "the power and duty to say what the law is and to ensure that it is uniform throughout the jurisdiction." State v. Pena, 869 P.2d 932, 936 (Utah 1994) (citation omitted). We will disturb the Commission's find-

ings of fact only if they are clearly erroneous. *Drake v. Indus. Comm'n of Utah*, 939 P.2d 177, 181 (Utah 1997). The issue before us is a mixed question of law and fact, one that calls upon us to review the application of law to fact. The facts relating to the accident and the take-a-car-home program are undisputed. We concern ourselves with the interplay between these facts and the eligibility requirements for workers' compensation benefits found in Utah's Workers' Compensation Act, Utah Code sections 34A–2–101 to–803.

¶ 14 In *Drake*, we explored in considerable detail the standard of review that we should assign to appeals from Industrial Commission rulings based on mixed questions of law and fact. We undertook this exploration in a context very similar to the one here. The facts were undisputed, and the legal principle the Commission applied to the facts was the "special errand" doctrine, a cousin of the going and coming rule that we examine today.

¶ 15 We settled upon a conditionally deferential standard of review grounded in two considerations. First, practical difficulties attend any attempt to craft coherent and evolving legal rules from the multifarious array of factual settings presented by scope-of-employment cases. In this environment, our preeminent role, as an appellate court charged with interpreting the law, would shrink away if we became a forum to merely reassess the facts.[1] *See Drake*, 939 P.2d at 181 (citing *Pena*, 869 P.2d at 936).

■■■■ ¶ 16 Furthermore, our statutory obligation to give effect to the Act's purpose to " 'alleviat[e] hardship upon workers and their families' " heightens the degree of oversight of Commission rulings, particularly those that result in a denial of benefits. *Id.* at 182 (quoting *Baker v. Indus. Comm'n*, 17 Utah 2d 141, 405 P.2d 613, 614 (1965)). We will therefore look closely to assure ourselves that the Commission has liberally construed and applied the Act to provide coverage and

has resolved any doubt respecting the right to compensation in favor of an injured employee. *See id.* at 182, 939 P.2d 177 (citing *State Tax Comm'n v. Indus. Comm'n*, 685 P.2d 1051, 1053 (Utah 1984)).

■■■■ ¶ 17 Our obligation to adopt an employee-friendly perspective on scope-of-employment cases from the Commission highlights the material difference between this case and the earlier case involving this accident, *Ahlstrom v. Salt Lake City Corp.*, 2003 UT 4, 73 P.3d 315. Unlike Ms. Ross's quest for benefits, the Ahlstrom plaintiffs were not entitled to a sympathetic application of the going and coming rule in aid of their effort to make Salt Lake City vicariously liable for Ms. Ross's negligence. Thus, elements of the take-a-car-home program that were insufficient to render Ms. Ross an employee for the purpose of Salt Lake City's vicarious liability were nevertheless adequate to make Ms. Ross eligible to receive workers' compensation benefits.

¶ 18 We break no new ground by applying different standards of review to scope-of-employment cases derived from vicarious liability and workers' compensation cases. In *Ahlstrom*, we anticipated the arrival of this appeal when we stated that

[w]ith very different presumptions governing worker's compensation and negligence cases, it would not be wise to hold that the rules governing scope of employment questions in one area are wholly applicable to the other because the legal effect of identical facts may be different in a negligence case than in a worker's compensation case.

*Ahlstrom*, 2003 UT 4, ¶ 7, 73 P.3d 315.

## ANALYSIS

■■■■ ¶ 19 To be eligible for workers' compensation benefits, an employee's injury must arise out of and be sustained in the course of her employment. Utah Code Ann. § 34A–2–401. As a general rule in Utah, an employee's injury does not arise out of and

---

1. We have not retreated, however, from exercising *de novo* review of equally fact-intensive matters that arise in the realm of search and seizure. We have not ceded deference in these cases both because they concern constitutional rights and because irrespective of the difficulties inherent in

extracting general rules from fact-intensive matters, we nevertheless believe it a worthy endeavor to offer some guidance to law enforcement officials charged with the duty of conducting their affairs within constitutional bounds. *See State v. Brake*, 2004 UT 95, ¶ 15, 103 P.3d 699.

occur in the course of employment if the injury is sustained while going to or coming from work. *VanLeeuwen v. Indus. Comm'n,* 901 P.2d 281, 284 (Utah Ct.App.1995). The coming and going rule arose because " 'in most instances, such an injury is suffered as a consequence of the risks and hazards to which all members of the traveling public are subject rather than risks and hazards having to do with and originating in the work or business of the employer.' " *Drake v. Indus. Comm'n of Utah,* 939 P.2d 177, 182 (Utah 1997) (quoting 82 Am.Jur.2d *Workers' Compensation* § 296 (1992)).

¶ 20 While being conceptually accessible, the "risks and hazards" formulation of the going and coming rule is poorly equipped to handle the task of evaluating the relationship between an employer and an employee at the time an injury occurs. Thus, courts have searched for more utilitarian methods to measure the degree of employer involvement in the activity in which the employee was engaged when the injury occurred. In almost every instance, these measures can be reduced to one unit of measure—benefit.[2] Typically, courts have adopted the methodology of dissecting the circumstances of the trip that resulted in the injury, assaying each for indicia of benefit, assigning the element of benefit to either the employer or the employee, and tallying up the final allocation of benefits. *See VanLeeuwen,* 901 P.2d at 285.

¶ 21 Indeed, we conducted such an exercise in *Ahlstrom.* After doing so, we concluded that the benefits accruing to the City from Ms. Ross's trip to her home were insufficient to "tip the balance" of benefits to the side of the City. *Ahlstrom v. Salt Lake City Corp.,* 2003 UT 4, ¶ 12, 73 P.3d 315.

¶ 22 The City urges us to repeat the *Ahlstrom* "tipping point" approach in this appeal. The City implies that we could not apply *Ahlstrom* without exposing a flaw in the Commission ruling. The Commission determined that "on balance" the City received the predominant benefit from Ms. Ross's travel. According to the City, this allocation of benefits is squarely at odds with *Ahlstrom's* conclusion that the balance of benefits tipped in favor of Ms. Ross. *Id.* ¶ 13.

¶ 23 We have made clear, however, that we reject the claim that the allocation of benefits standard applicable in negligence cases can be superimposed onto workers' compensation cases. While we expressly made this point in *Ahlstrom,* we have long indicated that the benefit to an employer need not be predominate over those of an employee before the employee becomes eligible for workers' compensation benefits. In *Black v. McDonald's of Layton,* 733 P.2d 154, 156 (Utah 1987), we stated that an employee may be eligible for workers' compensation benefits if the injury occurs while the employee is engaged in an activity that is at least incidental to employment. We added that an activity is "incidental to the employee's employment if it advances, directly or indirectly, his employer's interests." *Id.*

¶ 24 Even if the Commission and this court disagree over the allocation of benefits between the City and Ms. Ross, we are satisfied that the City enjoyed sufficient benefits from Ms. Ross's participation in the take-a-car-home program to affirm the Commission's determination of eligibility. The City does not dispute the Commission's conclusion that the City benefitted from the program by having more officers available for immediate response, from better care of patrol cars, and from increased police visibility. Officers with take-home cars were prepared to respond to emergency calls at any time. These officers always had at hand those items required to be kept in the take-home patrol cars, including their service gun,

---

**2.** It is true that we have also leaned on the concept of employer control over the activities of the employee to help us solve scope-of-employment puzzles. *VanLeeuwen,* 901 P.2d at 285. The power to control may, however, be usefully thought of as a gauge by which to measure the allocation of benefits, as the beneficiary of an activity will always be the party in whom vests the power to control its performance. Our court of appeals called into question the universal utility of employer control in assessing scope-of-employment cases when it affirmed an award of compensation for an injury sustained during the course of an activity (salting a driveway) free of any employer control. As such, the Commission correctly concluded that the employee's injuries arose "in the course of" his employment. *Ae Clevite, Inc. v. Labor Comm'n,* 2000 UT App 35, ¶ 10, 996 P.2d 1072.

police radio, identification, flashlight, ticket book, report forms, and flares.

■ ¶ 25 While it is also true that Ms. Ross enjoyed benefits from the program in the form of reduced transportation costs, these benefits are largely irrelevant to this scope-of-employment inquiry. Our focus is, instead, properly limited to whether the City derived sufficient benefits from the program to render Ms. Ross's injury one that occurred in the course of and arose out of her employment. The benefits conferred on Ms. Ross cannot be used to offset or diminish the significance of the benefits derived by the City in making this calculation.

¶ 26 The City erects its final line of defense around the notion that even if Ms. Ross's participation in the take-a-car-home program conferred sufficient benefits on the City to make participating officers eligible for workers' compensation benefits under most circumstances, those benefits had ebbed away by the time Ms. Ross's patrol car struck the Ahlstroms' vehicle well outside the boundaries of Salt Lake City. We disagree. The program contemplated that its participants might reside outside Salt Lake City and collected a mileage-based fee from those who did. The duty of participants to conform to the rules and regulations of the program were not, however, extinguished when the patrol car crossed the municipal boundary. The benefits that the program conferred on the City were present irrespective of the purpose of Ms. Ross's use of her patrol car or the destination of any particular trip. The program was designed in part to encourage in officers a heightened sense of responsibility toward their vehicles and to make them less likely, in the vernacular of automobile care, to treat the vehicles like "rentals." Moreover, while Ms. Ross's practical ability to respond promptly to a call would be diminished as she drove outside the boundaries of Salt Lake City, she was not relieved of her program duties and obligations when she left the confines of the city. Thus, benefits conferred on the City sufficient to render Ms. Ross eligible for workers' compensation benefits rode with Ms. Ross wherever she traveled as a program participant.

## CONCLUSION

¶ 27 The coming and going rule did not bar Ms. Ross from receiving workers' compensation benefits. Salt Lake City received incidental benefits from Ms. Ross's travel that were not common to commuter trips by ordinary members of the workforce. Consequently, Ms. Ross's accident arose out of and in the course of her employment under Utah's Workers' Compensation Act. Accordingly, we affirm the order of the Commission.

¶ 28 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice PARRISH concur in Justice NEHRING's opinion.