IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Layne Jex, | ) | OPINION |
| | ) | |
| Petitioner, | ) | Case No. 20100674-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Labor Commission, Precision | ) | (April 5, 2012) |
| Excavating, and Owners Insurance Co., | ) | |
| | ) | 2012 UT App 98 |
| Respondents. | ) | |

-----

Original Proceeding in this Court

Attorneys:     Aaron J. Prisbrey, St. George, for Petitioner
            Bret A. Gardner and Kristy L. Bertelsen, Salt Lake City, for Respondents
            Precision Excavating and Owners Insurance Co.

-----

Before Judges Orme, Roth, and Christiansen.

ROTH, Judge:

¶1     Layne Jex seeks judicial review of the Labor Commission's (the Commission) denial of workers' compensation benefits to him after he was injured while driving his personal vehicle from his workplace. Jex asserts that the denial was based on an erroneous determination that his vehicle was not an instrumentality of his employer's business. We decline to disturb the Commission's ruling.

## BACKGROUND

¶2    The facts of this case are essentially undisputed.[1]  On June 2, 2008, Jex was hired by Precision Excavating (Precision) in St. George, Utah, as a heavy equipment operator. Jex worked for several weeks on job sites in Washington, Utah, and Hurricane, Utah. At the time of the July 22, 2008 accident, Jex had been working on a job in Cedar City, Utah, approximately sixty miles north of St. George.  Although Precision provided limited shuttle transportation to Cedar City in the supervisor's truck on a first-come, first-served basis, employees were otherwise responsible for their own transportation to and from the job site.  Precision did not compensate them for their travel time or gasoline expenses.  Jex sometimes rode in the company shuttle, but he preferred driving his own truck.  On occasion, Jex's supervisor, Trent Holden, asked Jex to wait for a chronically-late employee named Nick to give him a ride to the job site.

¶3    In addition to driving himself to work, Jex carried his personal tools in his vehicle for use on the job.  Although Holden was aware that Jex used his own tools, Holden testified that Precision provided all of the tools and equipment necessary for completing the work on the work site and that Jex was not required to bring any of his own tools to work.  Jex acknowledged that "it was a convenience to have the tools so that he did not have to walk back and forth to the company truck which could be parked away from his work assignment."

¶4    Twice during the three to four weeks Jex was working at the Cedar City location,[2] Precision asked him to leave the work site, pick up a tool or part, and bring

---

1. We recite the facts according to the Commission's factual findings.  Jex has not challenged those findings.

2. The Commission did not make any express findings regarding how long Jex had been on the Cedar City job before the accident.  It did find, however, that Jex rode with Holden in the company vehicle from time to time over a three- to four-week period. This time period is consistent with Holden's testimony that Jex was hired in early June 2008 and worked for at least three weeks at other locations before transferring to the Cedar City job site.  The accident occurred July 22, 2008, just over seven weeks after Precision hired Jex.

the item back to the work site. Jex used his own vehicle to complete those errands. Holden indicated that a company truck had been available on both occasions but acknowledged that he was aware that Jex had used his personal vehicle and testified that they did not discuss which vehicle Jex should take. Jex was compensated for running these errands because they occurred during his shift, but he was not reimbursed for the use of his vehicle. As a result of the second errand, which required Jex to travel to Wheeler Machinery to pick up a hose he needed to operate a track hoe, Jex obtained two gallons of hydraulic fluid. Wheeler Machinery provided the hydraulic fluid at no cost to Precision because Precision rented the track hoe from Wheeler and the fluid in the track hoe might need replenishment after Jex replaced the hose. Jex testified that he kept the hydraulic fluid on the track hoe during the work day and stored it in his truck overnight so that he would have ready access to it if he needed it. He did not dispute Holden's testimony that he should have stored the fluid in one of the onsite company vehicles.

¶5 On July 22, 2008, Jex drove to the work site in his own vehicle. As he was leaving for the day, Jex noticed that another employee, James, who had ridden to work in Holden's truck, was still on site. Because Holden was working late, Jex inquired of him whether he should give James a ride home. Holden said, "'Yeah go ask [him] if he wants to go now, and give him a ride.'" Holden testified that he also informed Jex that James either could go with Jex if he was ready or he could stay, work overtime, and ride back to St. George with Holden later. Jex did not tell James that he could stay and work, however, and James accepted the ride with Jex. While traveling south on I-15 from Cedar City to St. George, "Jex had a tire failure," resulting in "a one car rollover vehicle accident." Jex "injured his low back with fractures at the L1 and L2 level."

¶6 Precision, through its insurance carrier, Owners' Insurance Company, denied workers' compensation benefits on the basis of the going and coming rule. The going and coming rule addresses when a person "acquires and abandons [his or] her status as an employee at the beginning and end of the workday" and provides that there is no "legal consequence to the employer" when "an untoward event . . . befalls an employee who is 'just' coming or going from the workplace." *Salt Lake City Corp. v. Labor Comm'n*, 2007 UT 4, ¶ 1, 153 P.3d 179. Jex then filed an application for hearing by an administrative law judge (ALJ) in the Labor Commission's Division of Adjudication. *See generally* Utah Code Ann. § 34A-2-801(1)(a) (2011) ("To contest an action of the employee's employer or its insurance carrier concerning a compensable industrial

accident . . . alleged by the employee . . . [, the employee] shall file an application for hearing with the Division of Adjudication.").[3]  At that hearing, Jex acknowledged the going and coming rule but argued that the instrumentality of business exception applied in this case and that benefits should not have been denied.  The instrumentality of business exception exempts an employee from the going and coming rule "where the employer requires the employee to use a vehicle as an instrumentality of the business." *VanLeeuwen v. Industrial Comm'n*, 901 P.2d 281, 284 (Utah Ct. App. 1995) (internal quotation marks omitted).  The ALJ issued a decision titled Findings of Fact, Conclusions of Law, and Order upholding the denial of workers' compensation benefits on the basis of the going and coming rule.  Jex then filed a motion for review by the Commission, asserting that the ALJ failed to consider the use of his vehicle as an instrumentality of the business.  *See generally* Utah Code Ann. § 34A-2-801(3)(a)-(b) (permitting a party to appeal the decision of the ALJ by filing a petition for review with the Division of Adjudication, which will then, absent certain circumstances not applicable here, assign the case to the commissioner for review).  The Commission rejected Jex's claim that his vehicle was an instrumentality of the business and affirmed the ALJ on the basis of the going and coming rule.  Jex now seeks review of the Commission's decision by this court.  *See generally id.* § 34A-2-801(7) (indicating that the Commission's decision may be judicially reviewed in accordance with title 63G, chapter 4 of the Utah Code); Utah Code Ann. § 63G-4-403(1)-(2)(a) (2011) (allowing judicial review of a formal agency decision by the appellate courts).

ISSUE AND STANDARD OF REVIEW

¶7     Jex challenges the denial of workers' compensation benefits, asserting that his injury "arose out of and in the course of his employment" with Precision.  In particular, he claims that the Commission improperly determined that his personal vehicle was not an instrumentality of Precision's business and therefore erroneously concluded that his accident was not exempt from the going and coming rule, which governs most employees traveling to or from work.  "The issue before us is a mixed question of law and fact, one that calls upon us to review the application of law to fact." *Salt Lake City Corp.*, 2007 UT 4, ¶ 13.  Because the facts are undisputed, our focus is on "the interplay between these facts and the eligibility requirements for workers' compensation

---

3. As a convenience to the reader, all citations are to the current version of the Utah Code because the relevant statutes have not been substantively amended from the version in effect at the time of Jex's accident.

benefits."  *See id.*  The Utah Supreme Court has previously determined that we review such questions under a "conditionally deferential standard of review," *see id.* ¶ 15, which grants "a measure of discretion to [the Commission]," tempered by the Workers' Compensation Act's policy of "alleviat[ing] hardship upon workers and their families" by "liberally constru[ing the act] . . . to provide coverage" whenever there is "[a]ny doubt respecting the right of compensation."[4]  *Drake v. Industrial Comm'n*, 939 P.2d 177, 182 (Utah 1997) (first, second, and fourth alterations in original) (internal quotation marks omitted).[5]

---

4.  This court, in *Murray v. Labor Commission*, 2012 UT App 33, 271 P.3d 192, recently reaffirmed that the legislature has granted discretion to the Commission to apply the Workers' Compensation Act.  *See id.* ¶ 16.  As a result, we stated that Commission decisions should generally be reviewed "for an abuse of discretion, applying a test of reasonableness and rationality," keeping in mind that the Workers' Compensation Act should be "liberally construed and applied . . . to provide coverage . . . [for] an injured employee." *See id.* ¶ 27.  *Murray*, however, recognized that the Utah Supreme Court has applied the conditionally deferential standard of review that we have set forth here in a going and coming case, even after its disavowal of that standard in *Westside Dixon Associates, LLC v. Utah Power & Light Co./Pacificorp*, 2002 UT 31, ¶ 8 n.1, 44 P.3d 755.  *See Murray*, 2012 UT App 33, ¶¶ 24-25 & n.3 (noting that the supreme court used the conditionally deferential standard in *Salt Lake City Corp. v. Labor Commission*, 2007 UT 4, ¶ 15, 153 P.3d 179).  Because we are upholding the denial of benefits while giving the Commission only a measure of discretion, application of a more deferential standard of review would not affect the disposition of this case in any event.

5.  In his opening brief, Jex also contends that the Commission relied upon unsupported hearsay evidence to reach its decision.  *See generally Prosper, Inc. v. Department of Workforce Servs.*, 2007 UT App 281, ¶ 10, 168 P.3d 344 ("[H]earsay evidence is clearly admissible in administrative proceedings.  It is also true, however, that [u]nder the residuum rule, findings of fact . . . must be supported by a residuum of legal evidence competent in a court of law." (omission and second alteration in original) (citations and internal quotation marks omitted)).  Precision responds that the issue was unpreserved for judicial review.  Instead of addressing Precision's preservation complaint, however, Jex seems to concede the issue, stating "for the purposes of this analysis Jex assumes the [Commission] correctly relied on [James]'s out of Court Statements."  We therefore do not further address the issue.

ANALYSIS

¶8    The Workers' Compensation Act compensates employees for injuries sustained in the course of employment. *See* Utah Code Ann. § 34A-2-401 (2011). However, "[a]s a general rule, injuries sustained by an employee while traveling to and from the place of employment do not arise out of and in the course of employment and are, therefore, not covered by workers' compensation." *VanLeeuwen*, 901 P.2d at 284. This is because "in most instances, such an injury is suffered as a consequence of risks and hazards to which all members of the traveling public are subject rather than risks and hazards having to do with and originating in the work or business of the employer." *Drake*, 939 P.2d at 182 (internal quotation marks omitted); *see also Barney v. Industrial Comm'n*, 29 Utah 2d 179, 506 P.2d 1271, 1272 (1973) ("Ordinarily an employee is deemed not to be within the course of his employment if he furnishes his own transportation and is injured while going to or from the premises where he is employed.").

¶9    There are certain exceptions to the going and coming rule, however, such as

> "where transportation was furnished by the employer to the benefit of the employer; where the employer requires the employee to use a vehicle as an instrumentality of the business; where the employee is injured while upon a 'special errand' or 'special mission' for the employer; where ingress and egress at the place of employment are inherently dangerous; and where the employee combined pleasure and business on a trip, and the business part predominated."

*VanLeeuwen*, 901 P.2d at 284 (quoting *State Tax Comm'n v. Industrial Comm'n*, 685 P.2d 1051, 1053 (Utah 1984)). Jex contends that the instrumentality of business exception applies under the facts of this case.

¶10    The Utah appellate courts have had occasion to consider the sort of circumstances in which the instrumentality of business exception arises. In the cases where the courts have concluded that a personal vehicle had become an instrumentality of business, the employer was found to have used the vehicle to its benefit to such an extent that the vehicle had become a means for accomplishing the employer's business purposes. *Cf. Black's Law Dictionary* 870 (9th ed. 2009) ("[I]nstrumentality" means "[a] thing used to achieve an end or purpose . . . [or a] means or agency through which a function of another entity is accomplished."). For example, in *Bailey v. Utah State Industrial Commission*, 16 Utah 2d 208, 398 P.2d 545 (1965), the supreme court

determined that the employee's vehicle had become an instrumentality of the employer's business and set aside the Commission's decision that the going and coming rule precluded compensation for an accident that occurred as the employee drove to work. *See id.* at 546-47. The employee brought his vehicle to work every day for customers to use while their cars were serviced and to make it available to respond to emergency calls; he stored implements in his car for roadside vehicle service; the company paid for oil and gas for the car and carried it on the books as a business asset; and the employee kept a second vehicle for personal use. *See id.* at 546. In reversing the Commission's decision, the court noted that these facts demonstrated that it was the employee's "regular and definite duty to take the vehicle in the mornings to the station for its use in the business." *Id.* at 547. Because "he was performing for his employer . . . a substantial service required by his employment," "his fatal injuries in an accident [on the way to work] . . . occurred in the course of his employment." *Id.*

¶11 Similarly, in *Moser v. Industrial Commission*, 21 Utah 2d 51, 440 P.2d 23 (1968), the supreme court appears to have used the instrumentality exception to reverse the Commission's denial of compensation under the going and coming rule, based on the court's conclusion that the employee's truck offered a substantial benefit to the employer's business because it had taken on the role of a company vehicle and was needed to complete the company's business. *See id.* at 24-25. The employee was employed as a truck driver, who leased the truck he used for work to the company. *See id.* at 23. As part of the arrangement, the employee reported maintenance issues to the employer. *See id.* at 24. Accordingly, when his truck had difficulty starting one morning, he called the employer to get instruction as to the course of the vehicle's maintenance; he was injured while implementing the employer's maintenance instructions. *See id.* The court concluded that, under the circumstances, the employee's "truck was committed to being used in [the employer]'s business with the full right of possession and control . . . the same as if the truck belonged to the company." *Id.* The fact that the employee's "bringing the truck to [work] . . . also provided [him] with transportation to work" was immaterial where he was "engaged in activities in carrying on the work of his employer." *Id.* at 24-25.

¶12 Utah's appellate courts, however, have not excepted an employee's travel to or from work from the usual rule when the travel did not confer a substantial benefit on the employer. In *Cross v. Board of Review*, 824 P.2d 1202 (Utah Ct. App. 1992), *superseded by statute on other grounds as stated in Murray v. Labor Comm'n*, 2012 UT App 33, ¶ 18, 271 P.3d 192, the employee was carrying company-owned tools in his vehicle and was driving to his home in Tooele, Utah, from his foreman's house in Salt Lake City, Utah, where he routinely left his vehicle and carpooled with the foreman up to the job site in

Coalville, Utah, when he was injured in an auto accident. *See id.* at 1203. We upheld the Commission's determination that the injury occurred in the course of coming from work because the employee was not compensated for transporting himself to work and was not required to ride with his foreman or to transport the company tools he stored in his truck. *See id.* 1205-06. And the nature of the construction industry did not render travel of some distance so atypical as to make the "[t]ransportation to a job site . . . integral and necessary to employment." *Id.* at 1205. Likewise, in *VanLeeuwen v. Industrial Commission*, 901 P.2d 281 (Utah Ct. App. 1995), we affirmed the denial of benefits for a lawn care employee who was injured while driving the company vehicle to work because "mere arrival at work is not considered a substantial benefit to the employer," *id.* at 285, and there were "no particular facts which t[ook]. . . [the employee]'s accident outside the 'coming and going rule'" because he was traveling "at the usual time to the usual place, with no work related duties until he arrived," *id.* at 283 (internal quotation marks omitted); *accord Barney*, 506 P.2d at 1271-72 (affirming the denial of benefits to an employee who was killed while commuting home from work because he was not performing any duties for the employer).

¶13    A closer case was presented in *Salt Lake City Corp. v. Labor Commission*, 2007 UT 4, 153 P.3d 179, which, though not strictly an instrumentality case, is useful in its analysis of the kind of benefit to the employer that excepts a trip home from the going and coming rule. There, the injured officer participated in the police department's "Take Home Car Program," a city program designed to improve the department's efficiency and community presence. *See id.* ¶¶ 5-6. The employee-officer was injured in an accident while returning home in her city-issued patrol car after attending a department meeting. *See id.* ¶ 9. According to the supreme court, the officer's participation in the Take Home Car Program conferred significant benefits upon the police department, such as improved care of the police cruiser and increased police presence, and in order for the department to reap those benefits, the officer had to drive the vehicle to her home. *See id.* ¶¶ 24-26. The police department therefore "received incidental benefits from [the officer]'s travel that were not common to commuter trips by ordinary members of the workforce."[6] *Id.* ¶ 27. As a result, the court determined that the officer's injuries were excepted from the going and coming rule because the accident "arose out of and in the course of her employment." *Id.* ¶¶ 25, 27.

---

6. In some sense, then, the police vehicle itself, which was owned by the employer, could be viewed as integral to the benefit that the employer expected from the Take Home Car Program.

¶14    This precedent is instructive in that it establishes a frame of reference for assessing whether Jex's injuries arose while merely going to or coming from work or whether the use of his personal vehicle provided Precision with benefits to such an extent that his injuries should be excepted from "the usual case of going to or coming from work, which we recognize as not within the scope of employment," *Moser*, 440 P.2d at 24 (internal quotation marks omitted). We must nevertheless keep in mind the principle that "[w]hether or not the injury arises out of or within the scope of employment depends upon the particular facts of each case." *State Tax Comm'n v. Industrial Comm'n*, 685 P.2d 1051, 1053 (Utah 1984).

¶15    Consequently, we begin our analysis by considering the circumstances surrounding Jex's transportation of James from the job site in Cedar City to determine whether these facts alone are sufficient to exempt his trip back to St. George on the day of the accident from the going and coming rule. We conclude that they are not. The Commission found that Jex's offer to transport James back to St. George was the product of his own initiative rather than a solicitation by Precision. Moreover, Holden testified that had James stayed on site, there was work to be done and he could have transported James back to St. George with little inconvenience when the work was completed. Based on these facts, Jex's transportation of James was not required by Precision, nor did it provide the company with any substantial benefit; rather, the trip during which the accident occurred fell squarely within the scope of the going and coming rule. *See generally Bailey*, 398 P.2d at 547 (exempting the employee's travel to work from the going and coming rule because the employer required the employee to use his vehicle for the employer's benefit); *Cross*, 824 P.2d at 1205-06 (concluding that a ride-sharing arrangement worked out between an employee and the construction crew foreman, rather than at the direction of the employer, did not confer a substantial benefit upon the employer to exempt an accident that occurred while the employee was traveling home from the going and coming rule).

¶16    Because the trip during which the accident occurred was not itself within the scope of his employment, we must now consider whether, under the totality of the circumstances, Jex's vehicle had been adapted to Precision's benefit to such an extent that it became an instrumentality of Precision's business for all purposes, including what would otherwise be simply traveling to and from the work site. According to Jex, his accident fell outside the ambit of the going and coming rule because Precision "involve[d itself] in an employee's use of his vehicle," in a manner that "benefits the employer, making [the] vehicle an instrumentality of business." Specifically, Jex contends that Precision benefitted from the use of his truck as a second shuttle vehicle, from its availability to perform off-site errands, and from the storage of tools and

hydraulic fluid in the truck, which allowed him to make more effective use of his time by not having to travel for tools or fluid to the company vehicle parked some distance from where he was working.

¶17    With respect to the use of his truck to transport Nick to the job site, Jex argues that "injuries that occur on the way to or coming home from work are compensable when the transportation is furnished by the employer for the employer's benefit." (Citing *State Tax Comm'n*, 685 P.2d at 1053.)  According to Jex, "Precision [u]ndertook to [f]urnish [t]ransportation to the Cedar City [w]orksite," and because the company vehicle was unable to accommodate all the employees, Precision depended on Jex to use his vehicle as a second shuttle.  Jex alleges that to accomplish this responsibility, he was "expected . . . to meet at the designated meeting spot and await [Holden's] instructions" about transporting Nick.  Jex further contends that the "expectation that Jex's truck was subject to Precision's use [for transporting employees] was so grounded in the assumptions of the parties" that he felt compelled to offer to take James home on the night of the accident.

¶18    The Commission indeed found that Holden asked Jex to wait an additional ten minutes "on occasion" for Nick to arrive and to then transport him to Cedar City.  The Commission also found that "Nick was often tardy and this became a pattern."  There is no indication, however, that providing auxiliary or overflow transportation services was a requirement of Jex's employment.  Jex was not compensated for his travel time, for the use of his vehicle, or for transportation of another employee.  Moreover, Jex testified that he generally drove himself to work because he preferred to ride in his own truck where there were no smokers, not because he felt obligated to have his truck available for extra-capacity shuttle service.  Jex's and Precision's conduct during Jex's time at the Cedar City job site corroborates this.  Despite his preference for taking his own vehicle, Jex chose to ride in the company shuttle about four times during the three to four weeks he was working in Cedar City, an average of at least once per week. There was no evidence that Precision complained about this decision or made any efforts to either dissuade Jex from taking advantage of the shuttle's availability or persuade him to drive his own vehicle.  Nor was there evidence that Jex was responsible for ensuring that Nick had alternative transportation on these days.  To the contrary, Holden testified that Nick had alternative means for getting to the work site when Jex was unavailable to drive him.

¶19    And while there is some evidence in the record to support Jex's claim that he transported Nick more frequently than "on occasion," it appears that Jex was acting on his own accord in those circumstances.  Jex explained that he felt that he had to wait for

and drive Nick to the job site because it was "something . . . [his] supervisor asked [him] to do" in the past. Holden did not dispute that Jex may have driven Nick a number of times but testified that he had only asked Jex to wait for and to transport Nick "on occasion." Jex even conceded that Holden had never "insist[ed] that [transporting Nick was his] responsibility, part of the terms of [his] employment."

¶20    The evidence as a whole therefore leads to a conclusion that Holden's occasional requests that Jex wait for Nick occurred on days when Jex had already elected to drive his own vehicle to the work site, as a favor to Nick and with some minimal benefit to the employer.[7] Jex's subsequent unilateral decision to transport Nick on other occasions, while proving him to be a dutiful and dependable employee, are more indicative of an accommodation to a fellow employee than of an additional responsibility of his job. This remains true, even assuming that had the accident occurred while Jex was transporting Nick to the job site at Holden's request, a case might be made that it would be compensable as a special errand carried out on the company's behalf. *See generally State Tax Comm'n v. Industrial Comm'n*, 685 P.2d 1051, 1054-55 (Utah 1984) (determining that the employee's travel to an out-of-town training session was a special errand because she "embarked on her training program with the knowledge and permission, and at the direction, of" her employer and it was a benefit to the employer to have the employee participate in the training).

¶21    Jex further contends that Precision "[r]outinely [r]elied [o]n the [u]se of [his] [t]ruck" to run errands. Regarding the errands, the Commission found that Jex had indeed used his personal vehicle to run errands for Precision on two occasions over the three- to four-week period that he was working in Cedar City. It also found, however, that a company vehicle had been available for completing those errands and although Holden was aware that Jex used his own vehicle, they never discussed which vehicle Jex was to take nor was Jex compensated for the use of his vehicle. Because Holden acquiesced in Jex's use of his own truck to run these two errands, an argument might be made that any injuries sustained in the course of completing them may have fallen within the special errand exception to the going and coming rule. *See generally id.* at 1054 ("'[W]hen the employee engages in a special activity which is within the course of his employment, and which is reasonably undertaken at the request or invitation of the employer, any injury suffered while traveling to and from the place of such activity is

---

7. Indeed, asking Jex to give Nick a ride to the job site from time to time when Nick was too late to ride in the company truck was the extent of Precision's requests; up to the date of the accident, Jex was neither asked to, nor did he, transport any other employee.

also within the course of employment and is compensable.'" (quoting *Dimmig v. Workmen's Comp. Appeals Bd.*, 495 P.2d 433, 439 (Cal. 1972)). The availability of company vehicles on location, however, means Jex's truck was not required for errands. And the fact that Jex's truck was used for errands on only two occasions, and apparently at Jex's option, does not support a conclusion that Jex's vehicle was an instrument of Precision's business.

¶22 Nor does Jex's use of his truck to transport and store his own tools and the two gallons of hydraulic fluid given to him by Wheeler Machinery make his vehicle an instrumentality of his employer's business. Precision provided all of the tools and fluid necessary for completing Jex's work onsite, albeit at a location at varying distances from where he was working. By Jex's own admissions and actions, his personal tools were not required for his work, but were rather a "convenience" that allowed him to have access to all the requisite implements without "hav[ing] to walk back and forth to the company truck which could be parked [some distance] away from his work assignment." Jex testified that while he preferred his own tools, he was able to perform his job without them on the days that he rode to the job site in the company truck. Further, Jex did not dispute Holden's testimony that he should have transferred the fluid to a company truck after he got it from Wheeler; rather, he acknowledged that he stored it in his truck--or on the track hoe itself--in case the track hoe's fluid needed to be replenished while he was working. Thus, although Precision enjoyed some minimal benefit from the time savings accrued by Jex's more convenient access to tools and hydraulic fluid, it was neither an expectation nor a requirement that Jex keep these items in his truck. Instead, it seems to have been more of a convenience to Jex himself. *See generally Cross v. Board of Review*, 824 P.2d 1202, 1206 (Utah Ct. App. 1992) (stating that the carrying of work implements not necessary for the job was not enough to qualify the employee for an exception to the going and coming rule), *superseded by statute on other grounds as stated in Murray v. Labor Comm'n*, 2012 UT App 33, ¶ 18, 271 P.3d 192.

¶23 In summary, the instrumentality of business indicia are not present in the facts of this case to the extent required to support Jex's contention that transporting his vehicle to and from the work site was within the course and scope of his employment with Precision because the vehicle had been effectively integrated into Precision's business. Rather, each of the activities Jex relies on provided the employer with only minimal or occasional benefit. Furthermore, with the exception of transporting Nick on the occasions when requested by Holden, Jex's use of his vehicle was the result of his unilateral decision, rather than a requirement of his position, and giving a ride to Nick when he was not instructed amounted to an accommodation rather than a requirement

of employment. In the absence of a showing that Precision made more regular demands on Jex's vehicle or received and acquiesced in a more pervasive benefit from its use than occurred here, we cannot say that the Commission erred in its conclusion that, by the date of the accident, Jex's vehicle had not become an instrumentality of his employer's business. *Compare Moser v. Industrial Comm'n*, 21 Utah 2d 51, 440 P.2d 23, 23-25 (1968) (concluding that the employee's vehicle had become an instrumentality of business where it "was committed to being used in employer's business with the full right of possession and control . . . the same as if the truck belonged to the company"), *and Bailey v. Utah State Indus. Comm'n*, 16 Utah 2d 208, 398 P.2d 545, 546-47 (1965) (concluding that the employee's vehicle had become an instrumentality because it was required to be brought to the station every day and was used daily in the course of business), *with VanLeeuwen v. Industrial Comm'n*, 901 P.2d 281, 285 (Utah Ct. App. 1995) (declining to treat an employee's travel to work as exempted from the going and coming rule where the employer derived no substantial benefit from his mere arrival at work and he had performed no work-related duties during the travel), *and Cross*, 824 P.2d at 1205-06 (declining to characterize the employee's vehicle as an instrumentality because the employee was neither compensated for his travel time nor required to report to a meeting spot to ride with his foreman or to carry work implements). And because Jex's transportation of James from the work site on the day of the accident was not a special errand and bestowed no "incidental benefits from [Jex]'s travel that were not common to commuter trips by ordinary members of the workforce," *see Salt Lake City Corp. v. Labor Comm'n*, 2007 UT 4, ¶ 27, 153 P.3d 179, Jex's injuries on that trip arose out of his coming from work, an activity for which the employer bears no legal consequence, *see id.* ¶ 1 (stating that there is no legal consequence to the employer "[i]f an untoward event, typically an accident of some kind, befalls an employee who is 'just' coming or going from the workplace").

¶24 Thus, neither the specific utilizations of his truck for the employer's benefit nor the totality of the circumstances lead to a conclusion that Jex's vehicle was being used by Precision to such an extent or in such a manner that Jex can be characterized as transporting an instrumentality of the business to and from the work site when he was driving James back to St. George on the day of the accident. Because we believe that the facts of this case do not present a close question on the compensability of Jex's injuries, we consider the Commission's denial of workers' compensation benefits appropriate even in view of the policy of "alleviat[ing] hardship upon workers and their families" by "liberally constru[ing the workers' compensation act] . . . to provide coverage" whenever there is "[a]ny doubt respecting the right of compensation," *Drake v. Industrial Comm'n*, 939 P.2d 177, 182 (Utah 1997) (first and third alterations in original) (internal quotation marks omitted). The Commission therefore did not err in

determining that the going and coming rule applied and that Jex was not within the course and scope of employment when his injuries occurred.

CONCLUSION

¶25    Because Jex was not required to use his truck to conduct Precision's business, nor did its use confer a substantial benefit upon Precision, the Commission did not err in determining that it was not an instrumentality of business. We therefore will not disturb the Commission's decision to deny workers' compensation benefits on the basis of the going and coming rule.

_____
Stephen L. Roth, Judge

-----

¶26    WE CONCUR:

_____
Gregory K. Orme, Judge

_____
Michele M. Christiansen, Judge