2018 UT App 71

## THE UTAH COURT OF APPEALS

GENEINNE ELLEN DAVIS,
Petitioner,

*v.*

LABOR COMMISSION; AIR SYSTEMS INC.; AND ACUITY, A MUTUAL
INSURANCE COMPANY,
Respondents.

Opinion
No. 20161081-CA
Filed April 26, 2018

Original Proceeding in this Court

Benjamin T. Davis, Attorney for Petitioner

Mark R. Sumsion and Cody G. Kesler, Attorneys for
Respondents Air Systems Inc. and Acuity, a Mutual
Insurance Company

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
DAVID N. MORTENSEN and DIANA HAGEN concurred.

HARRIS, Judge:

¶1 A construction worker (Worker) employed by Air Systems, Inc. (Air Systems) crashed a company truck while commuting to work one morning, sustaining fatal injuries. His wife, Geneinne Ellen Davis (Davis), filed a claim for workers' compensation benefits. Subsequently, both an administrative law judge (ALJ) and the Utah Labor Commission (the Commission) denied Davis's claim, determining that at the time of his death Worker was not acting in the course and scope of his employment and that Davis was therefore not entitled to workers' compensation benefits. Upon review, we decline to disturb the Commission's determination.

BACKGROUND

¶2 Worker was employed by Air Systems to install air-conditioning units and ductwork in various construction projects in the Salt Lake City and Park City areas. Air Systems allowed Worker to drive a pickup truck owned by Air Systems back and forth each day from his home to the various worksites, and Air Systems allowed Worker to choose the route he took to the worksites each day. Air Systems paid the cost of fuel for the truck as well as all maintenance costs. Worker was sometimes accompanied by another Air Systems employee while commuting to work, and would sometimes use the truck to pick up materials and equipment from supply vendors or from Air Systems' office on his way to the worksites. Worker was not paid for the time he spent commuting to and from work in the truck, but was paid for time spent picking up materials and equipment.

¶3 On August 15, 2015, Worker left his home to commute to a jobsite in Park City, where he had been working periodically for several months. On that particular morning, Worker was not accompanied by any other employees, did not stop at Air Systems' office or any supply vendors, and was not transporting company materials or equipment.[1] Also, on that particular morning, Worker chose to travel to Park City over Guardsman Pass, a narrow high-mountain road, instead of using the more conventional (and quicker) route up Parleys Canyon on Interstate 80. While traveling over Guardsman Pass, the truck went off the side of the road on a sharp curve and rolled down a

---

1. If Worker had stopped on his way to work to pick up materials before proceeding to Park City, Davis may have been able to invoke the "special errand" exception to the "going and coming" rule. *See Drake v. Industrial Comm'n of Utah*, 939 P.2d 177, 183–84 (Utah 1997). However, Worker was not transporting any such materials during the commute in question and, accordingly, Davis makes no argument that the "special errand" exception ought to apply in this case.

steep mountainside. Worker was ejected from the truck and fatally injured.

¶4 Following Worker's death, Davis filed a claim with Air Systems seeking compensation for Worker's funeral and burial expenses. Air Systems responded by asserting that Worker was not acting "in the course and scope of his employment" at the time of the accident. Davis then applied for a hearing with the ALJ, who agreed with Air Systems and denied Davis's claim, determining that Worker was not acting within the course and scope of his employment at the time of the accident because, even though Worker was driving a company truck, Worker was commuting to work. Davis subsequently sought review with the Commission, which affirmed the ALJ's decision. Davis now seeks judicial review of the Commission's determination.

ISSUE AND STANDARD OF REVIEW

¶5 Davis raises a single issue for our review: whether the Commission erred in denying Davis's claim for workers' compensation benefits related to Worker's death. Whether the Commission correctly denied benefits is a mixed question of law and fact. *Jex v. Utah Labor Comm'n*, 2013 UT 40, ¶ 15, 306 P.3d 799. "The standard of review we apply when reviewing a mixed question can be either deferential or non-deferential," depending on whether the fact-finder is "in a superior position" to decide the question than the appellate court. *Id.* (citation and internal quotation marks omitted). In cases which turn on the "fact-intensive" determination of whether to apply the "going and coming" rule excluding employee commutes from the course and scope of a worker's employment, we apply the more deferential standard. *Id.* ¶ 16. This is because, given the case-by-case nature of the inquiry, such questions "do[] not lend [themselves] easily to consistent resolution through a uniform body of appellate precedent," and because the ALJ and the Commission "have firsthand exposure to the evidence in such

cases," thus rendering their view of the matter "superior" to ours. *Id.* (citation and internal quotation marks omitted).


ANALYSIS

¶6 Under Utah law, when an employee dies in an accident "arising out of and in the course of the employee's employment," compensation shall be paid for "loss sustained on account of the . . . death," including "the amount of funeral expenses." Utah Code Ann. § 34A-2-401(1)(a), (b)(iii) (LexisNexis 2015). Our legislature, however, has never defined "course of . . . employment," and therefore the term has come to be defined in terms of judicially-created "rules and exceptions that offer shorthand grounds for deeming various activities either within or beyond a person's 'course of employment.'" *Jex*, 2013 UT 40, ¶ 17.

¶7 One of these judicially-adopted "subsidiary rules" that helps to define "course of . . . employment" is a "principle known as the 'going and coming' rule." *Id.* ¶¶ 18, 21. That rule establishes generally that workers injured while commuting are not entitled to workers' compensation benefits because "an employee's injury does not arise out of and occur in the course of employment if the injury is sustained while going to or coming from work." *Salt Lake City Corp. v. Labor Comm'n*, 2007 UT 4, ¶ 19, 153 P.3d 179; *see also VanLeeuwen v. Industrial Comm'n of Utah*, 901 P.2d 281, 284 (Utah Ct. App. 1995) (stating that "[a]s a general rule, injuries sustained by an employee while traveling to and from the place of employment do not arise out of and in the course of employment and are, therefore, not covered by workers' compensation").

¶8 However, there are several exceptions to the general "going and coming" rule, among them the "so-called 'instrumentality' exception," whose application depends upon whether the vehicle in question is an "instrumentality of the employer's business in light of the employer's benefit from and

control over it." *Jex*, 2013 UT 40, ¶ 19 (citation and internal quotation marks omitted). Davis concedes that Worker was commuting to work when his accident occurred, and that the facts of this case therefore generally fall within the "going and coming" rule. However, Davis contends that the "instrumentality exception" to the "going and coming" rule applies in this case.

¶9     When analyzing whether a vehicle is an instrumentality of an employer's business, our supreme court has identified two critical factors: (1) the degree of control the employer exercises over the employee's use of the vehicle; and (2) the benefit the employer derives from the employee's use of the vehicle. *Id.* ¶ 37. These two factors are evaluated "on a sliding scale," so that if one factor is only weakly present, a strong showing of the other factor will be necessary in order to establish that a vehicle is an instrumentality. *Id.*; *see also id.* ¶ 37 n.7 (stating that "[w]here employer control is lacking, a greater showing of benefit is required"). Thus, in order to demonstrate that Worker's accident occurred in the course and scope of his employment, Davis must demonstrate that Air Systems exercised such control over the company truck and reaped such benefits from Worker's use of the truck as to make the truck an instrumentality of Air Systems' business.

¶10     Before turning to an analysis of these factors under the facts of this case, it is important to note the breadth of the instrumentality exception to the "going and coming" rule. While other exceptions (such as the "special errand exception") are narrowly analyzed on a trip-by-trip basis and, if applicable, bring only a particular day's commute within the course of employment, the instrumentality exception is "all-purpose," such that, if it applies, "every work commute" taken in a particular vehicle will fall within the course of employment. *Id.* ¶¶ 19 & n.2, 20, 48. Thus, in order for the instrumentality exception to apply in this case, Davis must demonstrate that Air Systems controlled Worker's use of the truck and/or reaped such a benefit from Worker's use of the truck to such a degree that

every drive Worker took in the truck fell within the course of his employment.

A

¶11 We first analyze the "control" factor, and conclude that Davis makes only a moderate showing that Air Systems exercised control over his use of the truck.

¶12 Davis first points out that Air Systems owned the truck (and took possession of it after the accident) and paid fuel and maintenance costs. We grant Davis's point with regard to ownership—certainly ownership is a crucial indicator of at least the right to control. Indeed, the fact that Air Systems owned the vehicle gave it the right to place restrictions on its use and even gave it the right, if it wished, to remove the truck from Worker's possession entirely. Company ownership of the vehicle is, without question, a fact that demonstrates at least the potential for control.

¶13 But the fact that Air Systems paid for the fuel and maintenance costs related to the truck's use does not go very far toward indicating control. Ensuring that a vehicle is fueled and regularly maintained is part and parcel of vehicle ownership and operation, regardless of whether someone else is allowed to borrow or use the vehicle. Indeed, Air Systems would have had to pay fuel and maintenance costs on the truck even if it had elected to require the truck to be parked on its property every night. Similarly, had Worker used his own vehicle to commute to and from job sites, Worker would have needed to fuel and maintain that vehicle. We are unpersuaded that Air Systems' decision to pay for the fuel and maintenance costs associated with the truck meaningfully supports the conclusion that Air Systems controlled Worker's use of the truck.

¶14 It is also important here that, even though Air Systems, by virtue of its ownership of the truck, had the *right* to exercise control over its use, as a factual matter it did very little to

actually impose any restrictions on Worker's use of the truck. The only specific restriction to which Davis can point is the fact that Worker was not free to drive the truck wherever he wanted; rather, Air Systems only allowed Worker to use the truck to travel between his home, jobsites, Air Systems' offices, and various locations to pick up materials. There are other restrictions Air Systems could have imposed, but did not. For instance, Air Systems placed no restrictions on what Worker had to wear when operating the truck, or on what Worker had to take with him in the truck when driving it. Likewise, Air Systems placed no restrictions on Worker's ability to invite passengers to ride with him in the truck, and did not ever mandate that Worker transport other employees to worksites. *See Jex*, 2013 UT 40, ¶¶ 42–43 (stating that "providing a ride for [other employees] was . . . not a requirement of [worker's] employment, but a mere request"). Air Systems placed no restrictions on when Worker had to begin or end his commute. Moreover, and significantly for present purposes, Air Systems made no effort to dictate to Worker what route he had to take when traveling to and from his home in the truck. The hands-off approach taken by Air Systems in this case can be contrasted with more restrictive approaches taken by employers in other cases in which employers elected to place heavy restrictions on a vehicle's use. *See, e.g.*, *Salt Lake City Corp.*, 2007 UT 4, ¶ 7 (noting that the employer required the worker "to carry a service gun, police radio, identification, flashlight, ticket book, report forms, and flares and wear appropriate attire in the vehicle at all times," and placed restrictions on when and under what circumstances passengers could ride in the vehicle).

¶15   In summary, Air Systems owned the truck and, as owner, did have the right to control its use. But in order for this factor to weigh heavily in favor of Worker, more must be shown than simple company ownership of the vehicle. In this case, we do not view the level of control exercised by Air Systems as particularly high, and conclude that Air Systems' "control over [worker] was no greater than its control over any other employee traveling to and from work." *See VanLeeuwen*, 901 P.2d at 285. Accordingly,

we conclude that Davis has made, at best, only a moderate showing with regard to the "control" factor. Especially considering the deferential standard of review we apply here, we have no reason to take issue with the Commission's determination that the "control" factor does not weigh strongly in favor of applying the instrumentality exception here.

B

¶16 Next, we analyze the "benefits" factor, and conclude that Air Systems realized only minimal or incidental benefits from Worker's use of the truck, and that Davis has made only a relatively weak showing with regard to this second factor. This conclusion is guided by our supreme court's holding in *Jex*, in which it held that "[m]ere incidental benefit is not sufficient, standing alone, to sustain invocation of the instrumentality exception." *Jex*, 2013 UT 40, ¶ 33.

¶17 Davis first points out that Air Systems benefitted from Worker's use of the truck because Worker would more reliably get to work on time and because Worker would occasionally use the truck to give other Air Systems employees a ride to work. However, as our supreme court has noted, "the benefit of having employees show up to work is not a meaningful one in light of the 'going and coming' rule." *Id.* ¶ 49. This is true even if an employee uses a vehicle to ensure that more than one employee arrives at work on time. *Id.*

¶18 Davis further argues that Air Systems received a benefit from Worker's use of the truck because Worker sometimes stopped at a vendor or at the Air Systems office on his way to the worksites to pick up tools or equipment for one of the jobs he was working on. Indeed, during the administrative proceedings, a representative of Air Systems stated that he perceived Worker's capacity to haul tools and equipment to be the primary benefit Air Systems reaped from Worker's use of the truck. While the fact that Worker was able to use the company truck to haul materials he might not have been able to haul in a company

car is a fact that demonstrates some benefit to Air Systems, this benefit did not depend on Worker's use of the truck for commuting purposes.[2] In fact, Air Systems could have required Worker to drive his personal vehicle to a company parking lot and transfer to the company truck each day before picking up materials, and could have thereby reaped substantively the same benefit.

¶19     Finally, Davis asserts that Air Systems received a benefit from Worker's use of the truck because Worker, in driving the truck to his home every day, would have been more motivated to care for the truck as if it were a personal vehicle rather than treating it like a rental vehicle, thus improving the maintenance of the vehicle. While we do not doubt that this could theoretically have been the case, Davis cites no record evidence to support her contention that the truck was better maintained due to Worker's use of it, and in any event any benefit realized by Air Systems as a result of marginally better maintenance is a rather small benefit.

¶20     In summary, there is no question that Air Systems did realize some incidental benefit from allowing Worker to commute in the company truck: Worker arrived at work on time more reliably, maintenance may have been accomplished more regularly, and Worker could stop on his way to work and pick up materials. However, we do not view these benefits as particularly significant, and conclude that Davis has made only a relatively weak showing with regard to the "benefits" factor. We therefore have no reason to take issue with the Commission's

---

2. Davis asserts, for the first time on appeal, that Air Systems benefited from Worker's use of the truck because Worker was "essentially 'on-call'" while using the truck and could be directed at any time by Air Systems to perform work-related errands using the truck. However, Davis cites no evidence in the record that Worker was ever asked to perform any such tasks in his off hours.

determination that "Air Systems' . . . benefit from [Worker's use of] the truck [was] minimal."

C

¶21　Applying these two factors on a sliding scale, we conclude that Davis has failed to make the showing necessary to convince us that the instrumentality exception applies here. Davis cannot make a particularly strong showing on either part of the test. Accordingly, we simply cannot conclude that Air Systems' control over and benefit from Worker's use of the truck was such that "every work commute" Worker took in the truck should be considered within Worker's "course of employment." *See Jex*, 2013 UT 40, ¶ 48.

¶22　In fact, we find this case materially indistinguishable from our decision in *VanLeeuwen*, in which a landscaping company provided one of its supervisors with a company truck for use during his commutes, but placed no meaningful restrictions on the employee's use of the truck. *See VanLeeuwen*, 901 P.2d at 283. After the employee was injured in an accident that occurred during one of his commutes, we declined to disturb an administrative determination that the employee was not acting within the course of his employment at the time of the accident, and we rejected the employee's attempt to invoke the instrumentality exception to the "going and coming" rule. *Id.* at 285. We noted that, even though the supervisor consistently used the truck to commute to work, an employee's "mere arrival at work is not considered a substantial benefit to the employer" for purposes of this analysis. *Id.* Further, we noted as follows:

> [The supervisor] was not performing any service arising out of and in the course of his employment on the morning of the accident. [The employer] did not require [him] to perform any job-related service or use the vehicle as a business instrumentality while traveling to or from work. [The supervisor] was not on an employment related "special

errand" or "special mission" at the time of the accident. [He] was not being compensated for his time spent traveling between his home and [the company's] office. The accident did not occur on [the company's] premises, nor did [the supervisor's] duties require him to be at the place where the accident occurred. The risk that caused the accident was one common to the traveling public and was not created by duties connected with his employment.

*Id.* We also noted that the supervisor "chose his own route" on the day of the accident, and that his employer's control over him "was no greater than its control over any other employee traveling to and from work." *Id.*[3]

---

3. Davis argues that *VanLeeuwen* is inapplicable here because, as part of our discussion in that case, we included an analysis of the benefits that accrued to the employee (as opposed to the employer) from the employee's use of the truck. Davis correctly points out that the supreme court, in *Salt Lake City Corp.*, made clear that any benefits received by the employee "are largely irrelevant to this scope-of-employment inquiry," and that "[t]he benefits conferred on the [worker] cannot be used to offset or diminish the significance of the benefits derived by the" employer. *Salt Lake City Corp. v. Labor Comm'n*, 2007 UT 4, ¶ 25, 153 P.3d 179; *see also Jex v. Utah Labor Comm'n*, 2013 UT 40, ¶ 38, 306 P.3d 799 (explaining that "the ultimate question . . . must be answered by considering and balancing both the benefit *to the employer* and the nature and extent of the employer's control" (emphasis added)). We acknowledge that, after *Salt Lake City Corp.* and *Jex*, the extent to which the worker realized benefits from the use of the truck is not relevant to the analysis. However, our vestigial discussion in *VanLeeuwen* about employee benefits was brief, and does not appear to have played

(continued…)

¶23　And, contrary to Davis's arguments, we find the facts of *Salt Lake City Corp.* to be readily distinguishable from this case. In that case, the employer received a much higher level of benefits than were realized in this case, *see Salt Lake City Corp.*, 2007 UT 4, ¶ 24 (stating that the "City benefitted from the program by having more officers available for immediate response, from better care of patrol cars, and from increased police visibility"), and, as noted above, exercised a much higher degree of control over the employee's use of the vehicle, *id.* ¶ 7 (requiring the employee "to carry a service gun, police radio, identification, flashlight, ticket book, report forms, and flares and wear appropriate attire in the vehicle at all times," and placing restrictions on when and under what circumstances passengers could ride in the vehicle).

CONCLUSION

¶24　We see no infirmity in the manner in which the Commission applied the two-factor test for application of the instrumentality exception to the "going and coming" rule. There is ample support, both in the record and in the law, for the

---

(…continued)
a critical role in the result reached. In fact, while we mention benefits to the employee twice in *VanLeeuwen*, the bulk of our analysis concerned the supervisor's assertion "that [the employer] received a substantial benefit" from the employee's use of the truck, and our examination of whether the supervisor was "under the control and supervision of [the employer]" during his commutes. *VanLeeuwen v. Labor Comm'n of Utah*, 901 P.2d 281, 285 (Utah Ct. App. 1995). Indeed, our ultimate conclusion rested on the resolution of those two factors, without discussion of any potential benefits to the employee. *Id.* We consider that decision still robust; indeed, Davis concedes that neither *Salt Lake City Corp.* nor *Jex* called into question the vitality of *VanLeeuwen*'s ultimate holding.

Commission's conclusions that Air Systems did not exercise a high degree of control over Worker's use of the truck, and that Air Systems derived only minimal or incidental benefits from Worker's use of the truck. Accordingly, we decline to disturb both the Commission's determination that the truck was not an instrumentality of Air Systems' business, and its ultimate conclusion that Worker was not acting in the course of his employment at the time of the accident.

––––––––––