**AMERICAN ROOFING COMPANY and/or Employers Mutual Liability, Plaintiffs,**

v.

**INDUSTRIAL COMMISSION OF UTAH, George Roy Green, and the Second Injury Fund, Defendants.**

No. 870189–CA.

Court of Appeals of Utah.

April 13, 1988.

---

Michael E. Dyer (argued), Stephanie A. Mallory, Richards, Brandt, Miller & Nelson, Salt Lake City, for plaintiffs.

Erie V. Boorman, Adm'r, Second Injury Fund, Barbara Elicerio, Legal Counsel, Indus. Com'n, William W. Downes, Jr. (argued), Salt Lake City, for respondent Green.

Elliot Morris, Workers Compensation Fund of Utah, Salt Lake City.

Before BENCH, GARFF and ORME, JJ.

OPINION

BENCH, Judge:

American Roofing Company (American Roofing) and its insurance carrier Employer's Mutual Liability petition this Court for review of an order of the Industrial Commission (Commission) awarding workers' compensation benefits to an injured employee.

In February 1956, George Green, an employee of J.E. Steel Company (J.E.), injured his lower back in an industrial accident. He received medical treatment and, between 1956 and 1983, visited two chiropractors for occasional treatments. In February 1983, Green, while still employed by J.E., now known as Paulsen Steel Company (Paulsen), fell on a ladder and again injured his lower back. Following this injury, Green began experiencing severe stabbing pains beginning in his lower back and moving down his legs. Green would typically treat his pain with a hot bath and rest. In the summer of 1983, Green left Paulsen and was hired by American Roofing. Green's pains increased in May 1985, and he consulted Dr. Henrie, an orthopedic surgeon. Dr. Henrie diagnosed a degenerative spinal condition and scheduled a CAT scan and lumbar myelogram for September 25, 1985.

On September 6, while still in the employ of American Roofing, Green attempted to unload a thirty pound bucket of debris out of his truck. As he leaned over the bed and lifted the bucket, the bucket snagged on something and Green suffered a much more severe "lightning bolt" of pain in his back and legs. After several minutes, Green was able to get into his car and return home. He never returned to work again. The CAT scan and myelogram were performed as scheduled as well as a chemonucleolysis in November 1985. Green was diagnosed as suffering from disc herniation.

Green filed applications for a hearing seeking disability benefits from the 1983 and 1985 accidents. After a hearing on May 1, 1986, the Administrative Law Judge

(A.L.J.) referred the matter to a medical panel. The medical panel found the 1956, 1983, and 1985 injuries all contributed equally to the permanent degenerative problem present in Green's back. The panel concluded Green has a 24% permanent physical impairment due to the three injuries. Green was referred to the Utah Division of Rehabilitative Services which concluded he was not a feasible candidate for rehabilitation.

In his findings, conclusions, and order, and based on the findings of the medical panel and Rehabilitative Services, the A.L.J. found both the 1983 and 1985 injuries were compensable accidents which, together with the 1956 accident, rendered Green permanently and totally disabled. The A.L.J. concluded Green had a total combined permanent partial impairment of 24%, 8% attributable to each of the three injuries. At the time of the 1985 accident, Green worked approximately thirteen hours per week at a wage of $15.47 per hour. The A.L.J. determined Green was entitled to a compensation rate of $134.00 per week—two-thirds of Green's average weekly wage of $201.11—pursuant to Utah Code Ann. § 35–1–67 (1987). The A.L.J. held American Roofing, Paulsen, and the Second Injury Fund each liable for one-third of the benefits, and ordered American Roofing to pay all reasonable medical expenses incurred as a result of the 1985 accident.

Green filed a motion for review with the Commission arguing the compensation rate should be two-thirds of the average weekly wage at a minimum of twenty hours per week, or $206.37, pursuant to Utah Code Ann. § 35–1–75(1)(e) (1987). Paulsen also filed a motion for review claiming compensation benefits should solely be apportioned between American Roofing, the 1985 employer, and the Second Injury Fund. The A.L.J. issued a supplemental order rejecting both claims and affirming his findings, conclusions, and order. Motions for review were again filed and the Commission issued an order granting motion for review. In its order dated April 22, 1987, the Commission affirmed the compensable accident rulings. The Commission amended the A.L.

J.'s order to reflect a compensation rate of $201.00 in order to satisfy the requirements of both sections 35–1–67 and –75(1)(e). The Commission also recalculated and reapportioned liability for the benefits award in light of the Utah Supreme Court's decision in *Richfield Care Center v. Torgerson*, 733 P.2d 178 (Utah 1987). American Roofing filed a petition with this Court for review of the Commission's order.

On petition for review, American Roofing argues the 1985 injury was not the result of a compensable industrial accident as defined by statute and Utah case law. In reviewing a decision by the Commission, "this Court will not disturb the findings and orders of the Commission unless they are arbitrary and capricious, and they are arbitrary and capricious when they are contrary to the evidence or without any reasonable basis in the evidence." *Rushton v. Gelco Express*, 732 P.2d 109, 111 (Utah 1986).

■ Utah Code Ann. § 35–1–45 (1987) states, "Every employee ... who is injured ... by accident arising out of or in the course of his employment ... shall be paid compensation for loss sustained on account of the injury...." In *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986), the Utah Supreme Court interpreted section 35–1–45 as creating two prerequisites to finding a compensable injury. First, the claimant must prove the injury occurred "by accident." An accident, as defined in *Allen*, is "an unexpected or unintended occurrence that may be *either* the cause *or* the result of an injury." 729 P.2d at 22 (emphasis in original). In the instant case, American Roofing argues that since Green had been experiencing the bolts of pain in his lower back and legs since the 1983 accident, the 1985 injury was not unexpected and therefore not by accident. Although Green had previously experienced pain in his lower back and legs, after a period of rest he was able to return to work. However, when lifting the bucket of debris, Green suffered an injury which rendered him totally and permanently disabled, unable to return to work. Such an

injury was not expected or intended, and therefore a finding of "by accident" was not arbitrary and capricious but supported by the evidence.

▮ The second prerequisite for finding a compensable injury is proof of a causal connection between the injury and the claimant's employment duties. *Id.* The element of causation requires proof of both legal cause and medical cause. American Roofing does not raise the issue of medical causation, but does argue Green failed to establish legal causation. Under *Allen,* "[t]o meet the legal causation requirement, a claimant with a preexisting condition must show that the employment contributed something substantial to increase the risk he already faced in everyday life because of his condition." *Id.* at 25. In other words, the claimant's injury must have been the result of an exertion which is unusual or extraordinary in comparison to typical nonemployment activities and exertions expected of late twentieth century men and women. American Roofing claims lifting a thirty pound bucket of debris is not an unusual or extraordinary exertion. The Commission found that the weight alone did not make Green's exertion unusual or extraordinary. Rather, evidence of the weight, together with the manner in which Green lifted the bucket and the fact that the bucket snagged, combined to characterize Green's action as unusual or extraordinary under the *Allen* definition. American Roofing has failed to establish that such a finding is arbitrary and capricious. We therefore affirm the Commission's finding of a compensable injury.

▮ American Roofing next argues the Commission erred in its calculation of Green's compensation rate. Section 35–1–67 provides, in part:

*In cases of permanent total disability the employee shall receive 66⅔% of his average weekly wages at the time of the injury,* but not more than a maximum of 85% of the state average weekly wage at the time of the injury per week and not less than a minimum of $45 per week plus $5 for a dependent spouse and $5 for each dependent minor child under the age of 18 years, up to a maximum of four dependent minor children not to exceed the average weekly wage of the employee at the time of the injury, but not to exceed 85% of the state average weekly wage at the time of the injury per week.

(Emphasis added.) Section 35–1–75(1)(e) provides:

Except as otherwise provided in this act, the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute the weekly compensation rate and shall be determined as follows: If at the time of the injury the wages are fixed by the hour, the average weekly wage shall be determined by multiplying the hourly rate by the number of hours the employee would have worked for the week if the accident had not intervened. *In no case shall the hourly wage be multiplied by less than 20 for the purpose of determining the weekly wage.*

(Emphasis added.) The A.L.J. found Green's average weekly wage was $201.11, calculated by multiplying Green's hourly wage, $15.47, by thirteen, the actual number of hours Green worked per week. The A.L.J. rejected Green's claim that section 35–1–75(1)(e) requires a calculation based on a minimum of twenty hours per week because such a calculation would result in a compensation rate higher than Green's average weekly wage, a result contrary to the express language of section 35–1–67.

On review, however, the Commission found both statutory provisions apply. Section 35–1–75(1)(e) requires that the average weekly wage be based on a minimum of twenty hours per week. Therefore, Green's average weekly wage for purposes of computing disability payments is $309.40. Under section 35–1–67, Green's compensation rate is two-thirds of $309.40, or $206.37. In order to apply section 35–1–75(1)(e) without violating the express language of section 35–1–67, the Commission reduced Green's compensation rate to his

actual average weekly wage of $201.00.[1]

American Roofing argues the result reached by the Commission is both unreasonable and contrary to statute. American Roofing claims that since Green voluntarily limited his work hours to thirteen per week, it is unfair to award him compensation benefits for twenty hours. We disagree. Section 35–1–67 awards a permanently and totally disabled employee a compensation rate equaling two-thirds of his average weekly wage. Section 35–1–75(1)(e) defines an average weekly wage for an employee whose wages are fixed by the hour. If the legislature had intended to limit an hourly employee to the actual number of hours he or she worked per week in calculating the compensation rate, the legislature would not have included a statutory minimum of twenty hours. American Roofing fails to convince this Court that Green's compensation rate, as calculated by the Commission, is unreasonable or irrational. *Taylor v. Industrial Comm'n*, 743 P.2d 1183 (Utah 1987) (this Court defers to the Commission's interpretation and application of workers' compensation statutes as long its decision is reasonable and rational). We therefore affirm the award of workers' compensation benefits.

American Roofing last argues the Commission erred in failing to award reimbursement from the Second Injury Fund for medical expenses American Roofing incurred on Green's behalf as a result of the 1985 accident. Utah Code Ann. § 35–1–69(1) (1987) provides, in part:

> If any employee who has previously incurred a permanent incapacity by accidental injury, disease, or congenital causes, sustains an industrial injury for which either compensation or medical care, or both, is provided by this chapter that results in permanent incapacity which is substantially greater than he would have incurred if he had not had the pre-existing incapacity, or which aggravates or is aggravated by such pre-existing incapacity, *compensation, medical care, and other related items as outlined in Section 35–1–81, shall be awarded on the basis of the combined injuries, but the liability of the employer for such compensation, medical care, and other related items shall be for the industrial injury only. The remainder shall be paid out of the Second Injury Fund* provided for in Subsection 35–1–68(1), and shall be determined after assigning the impairment for the industrial injury on a whole person uncombined basis and then deducting this percentage from the total combined rating. This combined impairment rating may not exceed 100%.

(Emphasis added.)

Although the Commission specifically found sixteen percent, or two-thirds, of Green's permanent total disability to be preexisting, in its order the Commission inadvertently failed to include an order of reimbursement for medical expenses. The Second Injury Fund does not contest American Roofing's request and the Commission concedes its oversight. The Commission's order should therefore be amended to award American Roofing reimbursement from the Second Injury Fund for two-thirds of the medical expenses incurred by American Roofing on behalf of Green as a result of the 1985 injury, pursuant to section 35–1–69.

The order of the Commission is affirmed but for the issue of medical reimbursement. The matter is remanded for proper

---

**1.** The Commission seems to have concluded that the computed rate cannot exceed Green's *actual average weekly wage* under section 35–1–67 which provides that the computed rate cannot exceed the employee's *average weekly wage*. Average weekly wage is defined in section 35–1–75. Read in context, section 35–1–67 does not allow for the reduction imposed in the instant case. A reduction of this nature is allowed, however, in the Commission's discretion, under general fairness considerations. *See* Utah Code Ann. § 35–1–75(1)(g)(iii) (1987) and *Hodges v. Western Piling and Sheeting Co.,* 717 P.2d 718 (Utah 1986). In any event, Green does not contest the reduction from $206.37 to $201.00.

amendment of the order consistent with this opinion.

GARFF and ORME, JJ., concur.