*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2013 UT 38**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

MICHAEL R. MURRAY,
*Petitioner,*

*v.*

UTAH LABOR COMMISSION, UTAH STATE PARKS AND RECREATION,
and WORKERS COMPENSATION FUND,
*Respondents.*

No. 20120232
Filed June 28, 2013

On Certiorari to the Utah Court of Appeals

Attorneys:

Benjamin T. Davis, Salt Lake City,
for petitioner

James R. Black, Salt Lake City, Jamison D. Ashby, Sandy,
for respondents

CHIEF JUSTICE DURRANT authored the opinion of the Court,
in which ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, JUSTICE PARRISH, and JUSTICE LEE joined

CHIEF JUSTICE DURRANT, opinion of the Court:

## INTRODUCTION

¶1 We granted certiorari in this case to determine two questions. First, we must decide whether the court of appeals erred in reviewing a Labor Commission decision, which applied law to fact, for an "abuse of discretion" rather than as a mixed question of law and fact. Second, we must decide whether the court of appeals erred in ruling that an employee who injured his back when a small wave unexpectedly rocked his boat failed to establish that it was his act of steadying himself, rather than a preexisting back condition, that was the legal cause of his injury. We conclude that the court of appeals should have reviewed the Labor Commission's decision in this case as a traditional mixed

question of law and fact. But we ultimately uphold the court of appeals' conclusion that the employee failed to establish legal cause.

## BACKGROUND

¶2   The parties do not dispute the facts in this case. On July 13, 2008, Petitioner Michael R. Murray was working as a park ranger for Utah State Parks and Recreation. At approximately 11:00 a.m. that day, Mr. Murray was preparing to go on boating patrol at Red Fleet State Park. The patrol boat was tied by both the bow and the stern to the end of a dock that extended thirty-five to forty feet into the water. The boat and dock were located in an area that was "usually . . . a no-wake zone." Mr. Murray started the boat and untied the bow. He then went to untie the stern. The cable at the stern was locked with a combination lock. Mr. Murray bent over the edge of the boat, the height of which was slightly above his knees, at a thirty-five to forty degree angle. He was holding the cable and the lock in his left hand and entering the combination with his right. At the time, Mr. Murray was wearing a fifteen-pound service belt and a one-pound inflatable life jacket.

¶3   While he was in this position, a five- to six-inch wave from another boat's wake unexpectedly rocked the patrol boat, causing Mr. Murray to lose his balance. Mr. Murray steadied himself by shifting his right foot against the side of the boat, grabbing the side of the boat with his right hand, and twisting his body. He immediately felt a slight pain in his lower back, but he nevertheless went on patrol. The pain worsened over the next two to three hours to the point that Mr. Murray was forced to leave work early. The pain continued to increase over the next several days, and he sought medical attention.

¶4   On September 29, 2008, Mr. Murray filed a worker's compensation claim with the Utah Labor Commission (Commission). The Administrative Law Judge (ALJ) denied Mr. Murray's claim. She found that the accident aggravated a preexisting lower-back condition that had been "mostly asymptomatic" prior to the accident. She concluded that although the "unexpected" wave was the factual cause of Mr. Murray's injury, it was not the legal cause because it did not cause him "to go through any unusual exertions. He lost his balance a little but did not drop the lock or fall and was able to steady himself easily."

¶5    Mr. Murray petitioned the Commission to review the ALJ's decision. The Commission affirmed, reasoning that "simply losing and regaining one's balance while bending over slightly, even if unexpected, is not an unusual or extraordinary exertion."

¶6    Mr. Murray appealed the Commission's order to the Utah Court of Appeals.[1] The court reviewed the Commission's order under an "abuse of discretion" standard,[2] concluding that "the Legislature granted the Labor Commission discretion to apply the law to the cases before it."[3] Applying that standard, the court ruled that the Commission's determination that Mr. Murray failed to prove legal causation was "reasonable" and affirmed.[4] Mr. Murray filed a timely petition for certiorari, which we granted. We have jurisdiction pursuant to section 78A-3-102(3)(a) of the Utah Code.

## STANDARD OF REVIEW

¶7    "On certiorari, we review for correctness the decision of the court of appeals, not the decision of the [agency]."[5] And "[t]he correctness of the court of appeals' decision turns, in part, on whether it accurately reviewed the [agency's] decision under the appropriate standard of review."[6]

## ANALYSIS

¶8    We first consider whether the plain language of the Utah Administrative Procedures Act (UAPA)[7] necessarily incorporates standards of review so as to preclude application of our well-established approach to mixed questions of law and fact. Second, we consider whether the Commission's application of the law to the facts of Mr. Murray's case involved discretion, which would

---

[1] *Murray v. Labor Comm'n*, 2012 UT App 33, ¶¶ 1, 4, 271 P.3d 192.

[2] *Id.* ¶¶ 9–21.

[3] *Id.* ¶ 14.

[4] *Id.* ¶¶ 39–41.

[5] *State v. Levin*, 2006 UT 50, ¶ 15, 144 P.3d 1096.

[6] *Id.*

[7] UTAH CODE §§ 63G-4-101 to -601.

qualify it for an "abuse of discretion" standard of review on appeal. Finally, we consider whether the court of appeals erred in concluding that Mr. Murray failed to establish that his work-related accident, rather than his preexisting back condition, was the legal cause of his injury.

## I. UNDER A PLAIN-LANGUAGE INTERPRETATION OF UAPA, SECTION 63G-4-403 INCORPORATES STANDARDS OF REVIEW FOR SOME, BUT NOT ALL, AGENCY ACTION AND DOES NOT FORECLOSE OUR TRADITIONAL APPROACH FOR DETERMINING THE APPROPRIATE STANDARD OF REVIEW

¶9   The court of appeals relied on UAPA to determine which standard of review applies in this case,[8] concluding that, under our UAPA precedent, "questions of law and mixed questions of law and fact are generally reviewed for correctness."[9] It also recognized an exception to this correctness standard that applies when "the [L]egislature has either explicitly or implicitly granted discretion to the agency to interpret or apply the law."[10] Relying on this approach, the court determined that when a statute delegates discretion to an agency, it must review the agency's action for an abuse of discretion.[11]

¶10 Mr. Murray contends that we have effectively overruled the approach relied on by the court of appeals. He points out that in *Drake v. Industrial Commission*[12] and *Salt Lake City Corp. v. Labor Commission*,[13] which both involved Commission decisions, we employed our traditional approach for determining the appropriate standard of review. Under this approach, we first characterize the "issue as either a question of fact, a question of law, or a mixed question requiring application of the law to the facts" and then apply the corresponding level of deference to the

---

[8] *Murray v. Labor Comm'n*, 2012 UT App 33, ¶ 11, 271 P.3d 192.

[9] *Id.* ¶ 12.

[10] *Id.* (internal quotation marks omitted).

[11] *Id.*

[12] 939 P.2d 177 (Utah 1997).

[13] 2007 UT 4, 153 P.3d 179.

decision under review.[14] Mr. Murray claims that we should follow the same approach here and review his case as a traditional mixed question of law and fact.

¶11 The court of appeals faced a difficult decision in this case given our inconsistent precedent on UAPA standards of review. The court was certainly correct that UAPA applies to Mr. Murray's case. Because Mr. Murray seeks relief from the Commission's order denying him compensation benefits, we agree that UAPA governs our review of his claims on appeal.[15] But under the interpretation of UAPA we announce below, we disagree that UAPA necessarily forecloses our traditional approach for determining the appropriate standard of review.

¶12 In *Morton International, Inc. v. Tax Commission*, we stated that UAPA "incorporates standards that appellate courts are to employ when reviewing allegations of agency error."[16] We derived these standards from what is now section 63G-4-403 of UAPA, which addresses judicial review of formal adjudicative proceedings.[17] Specifically, we considered what standard of review UAPA requires for an agency's interpretation or application of the law under what is now section 63G-4-403(4)(d).[18] We concluded that UAPA incorporated a correctness standard for an agency's "interpretation or application of a statutory term."[19] We further concluded that the only exceptions

---

[14] *Drake*, 939 P.2d at 181.

[15] UTAH CODE § 63G-4-105(1) ("The procedures for agency action, agency review, and judicial review contained in this chapter are applicable to all agency adjudicative proceedings commenced by or before an agency on or after January 1, 1988.").

[16] 814 P.2d 581, 584 (Utah 1991), *superseded by statute*, UTAH CODE § 59-1-610(1)(b), *with regard to administrative decisions by the Tax Commission, as recognized in LPI Servs. v. McGee*, 2009 UT 41, ¶ 7, 215 P.3d 135.

[17] *Id.*

[18] *Id.* at 588.

[19] *Id.*; *see also SEMECO Indus., Inc. v. Tax Comm'n*, 849 P.2d 1167, 1172 (Utah 1993) (Durham, J., dissenting) (discussing *Morton*'s analysis of subsection 4(d)).

to this correctness standard are those instances where the Legislature has either explicitly or implicitly delegated discretion to an agency to interpret or apply the law.[20] If an agency indeed has such discretion, then under our interpretation of UAPA in *Morton*, we must review the agency's action for an abuse of discretion.[21]

¶13 As the court of appeals recognized in its opinion in this case, we have a significant amount of precedent applying *Morton*'s interpretation of UAPA.[22] But we took a different approach to reviewing agency applications of law to fact beginning with *Drake v. Industrial Commission*. In *Drake*, we analyzed the "special errand" rule to determine whether an employee was injured within the scope and course of her employment for purposes of receiving benefits under the Workers Compensation Act.[23] In selecting a standard of review, we turned to *State v. Pena*, a criminal case that analyzed the level of deference appropriate for a trial court's determination of a mixed question of law and fact.[24] Relying on *Pena*, we recognized that "[w]hether an employee was injured while on a special errand is . . . [a] highly fact-sensitive [question of law]."[25] Thus, we stated it "is a question that we cannot profitably review de novo in every case because we cannot hope to work out a coherent statement of the law through a course of such decisions."[26] We accordingly applied

---

[20] *Morton*, 814 P.2d at 588.

[21] *Id.*; *see also SEMECO Indus., Inc.*, 849 P.2d at 1172 (Durham, J., dissenting) (discussing subsection 4(d)'s interaction with subsection 4(h)(i) and concluding that "[i]f the specific agency interpretation or application was an exercise of the agency's statutorily delegated discretion, then under subsection (4)(h)(i) . . . the agency's interpretation or application of law should receive intermediate deference").

[22] *Murray*, 2012 UT App 33, ¶ 25.

[23] *Drake*, 939 P.2d at 179–81.

[24] *Id.* at 181 (citing *State v. Pena*, 869 P.2d 932, 936 (Utah 1994)).

[25] *Id.* at 182.

[26] *Id.* (internal quotation marks omitted).

a standard of review affording some deference to the Commission's decision.[27]

¶14 We later decided *Salt Lake City Corp. v. Labor Commission*.[28] There, we relied on *Drake* for selecting a standard of review for a Commission decision applying the "going and coming" rule to determine if an employee was injured within the scope and course of employment.[29] We characterized the standard of review applied in *Drake* as "conditionally deferential" and concluded that, like "special errand" cases, Commission decisions concerning the "going and coming" rule also required conditional deference.[30] We accordingly adopted and applied *Drake*'s standard of review in *Salt Lake City Corp.*[31]

¶15 We decided both *Drake* and *Salt Lake City Corp.* well after UAPA became applicable in January 1988.[32] Yet, in both cases, we failed to mention UAPA or explicitly overrule our interpretation of UAPA in *Morton*.[33] In light of this conflicting precedent on UAPA standards of review, we take the opportunity to clarify our interpretation of UAPA and the role it plays in our selection of a standard of review for agency decisions.

---

[27] *Id.*

[28] 2007 UT 4.

[29] *Id.* ¶¶ 13–18.

[30] *Id.* ¶ 15.

[31] *Id.*

[32] UTAH CODE § 63G-4-105(1). We decided *Drake* in 1997 and *Salt Lake City Corp.* in 2007.

[33] In *Drake*, we recognized in a footnote that applying "the standard enunciated in *Pena* . . . to an agency's application of the law to a particular set of facts is a departure from our prior decisions." 939 P.2d at 181 n.6. We further stated that "we believe the *Pena* standard is a more accurate measure of the degree of deference to be given to an agency . . . rather than using undefinable labels such as 'reasonableness.'" *Id.* But the case we cited as an example of our "prior decisions" is a pre-UAPA case. *See id.* (citing *Tax Comm'n v. Indus. Comm'n*, 685 P.2d 1051 (Utah 1984)).

¶16 Our decision in *Morton* seems to take for granted that section 63G-4-403 necessarily "incorporates standards that appellate courts are to employ when reviewing allegations of agency error."[34] Whether section 63G-4-403, in fact, incorporates standards of review presents a question of statutory interpretation. "When interpreting a statute, our goal is to give effect to the legislature's intent and purpose."[35] "We ascertain the legislature's intent by looking to the statute's plain meaning . . . ."[36] "Often, statutory text may not be plain when read in isolation, but may become so in light of its linguistic, structural, and statutory context."[37] "For this reason, our interpretation of a statute requires that each part or section be construed in connection with every other part or section so as to produce a *harmonious whole*."[38] Finally, "[i]f the language of the statute yields a plain meaning that does not lead to an absurd result, the analysis ends."[39]

¶17 Section 63G-4-403 governs judicial review of "final agency action resulting from formal adjudicative proceedings."[40] Subsection (4) allows an appellate court to "grant relief only if . . . it determines that a person seeking judicial review has been substantially prejudiced" by certain agency actions. Section 63G-4-403(4)(a) through (h) identifies those agency actions:

> (a) the agency action, or the statute or rule on which the agency action is based, is unconstitutional on its face or as applied;
> (b) the agency has acted beyond the jurisdiction conferred by any statute;

---

[34] *Morton*, 814 P.2d at 584.

[35] *Grappendorf v. Pleasant Grove City*, 2007 UT 84, ¶ 9, 173 P.3d 166.

[36] *State v. Bohne*, 2002 UT 116, ¶ 15, 63 P.3d 63.

[37] *State v. J.M.S. (In re J.M.S.)*, 2011 UT 75, ¶ 13, 280 P.3d 410 (internal quotation marks omitted).

[38] *Id.* (internal quotation marks omitted).

[39] *Carranza v. United States*, 2011 UT 80, ¶ 8, 267 P.3d 912.

[40] UTAH CODE § 63G-4-403(1).

(c) the agency has not decided all of the issues requiring resolution;

(d) the agency has erroneously interpreted or applied the law;

(e) the agency has engaged in an unlawful procedure or decision-making process, or has failed to follow prescribed procedure;

(f) the persons taking the agency action were illegally constituted as a decision-making body or were subject to disqualification;

(g) the agency action is based upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court;

(h) the agency action is:

(i) an abuse of the discretion delegated to the agency by statute;

(ii) contrary to a rule of the agency;

(iii) contrary to the agency's prior practice, unless the agency justifies the inconsistency by giving facts and reasons that demonstrate a fair and rational basis for the inconsistency; or

(iv) otherwise arbitrary or capricious.

¶18 While the above provisions clearly set forth and limit the types of agency actions for which appellate courts may grant relief, they do not expressly mandate standards of review courts must employ when reviewing those agency actions. The Legislature does not exhibit a clear intent—in section 63G-4-403 or UAPA generally[41]—to completely displace our traditional approach for selecting standards of review. Rather, by declining to expressly mandate standards of review for each type of agency action for which we may grant relief, the Legislature suggests the opposite intent to leave much of the normal appellate process in

---

[41] Section 63G-4-102, entitled "Scope and applicability of chapter," states only that "the provisions of this chapter apply to every agency of the state and govern . . . judicial review of the [agency] action." *Id.* § 63G-4-102(1). Section 63G-4-105, entitled "Transition procedures," merely states that UAPA displaces other "[s]tatutes and rules governing . . . judicial review" of agency action after January 1, 1988. *Id.* § 63G-4-105(1)–(2).

place.[42] Thus, the plain language of section 63G-4-403 clearly sets forth the type of agency actions for which we may grant relief, but it does not expressly mandate the standards of review we must employ when reviewing those actions.

¶19 Certain provisions of section 63G-4-403(4) do, however, imply a standard of review by the way in which the Legislature characterized the agency action. Section 63G-4-403(4)(g), for example, falls into this category. That provision allows us to grant relief for "agency action [that] is based upon a determination of fact . . . that is not supported by substantial evidence."[43] While this provision does not explicitly require a certain standard of review, it characterizes the agency action in such a way that implies a "substantial evidence" standard. This is because we can grant relief under this provision only after reviewing the agency's determination of fact for a lack of substantial evidence. Sections 63G-4-403(h)(i), (h)(iii), and (h)(iv) also fall into this category.

¶20 Importantly, the Legislature's characterization of some agency actions in terms of a standard of review is further evidence that it did not intend to completely displace our traditional standard of review framework. This is because the Legislature, while implying a standard of review for some agency actions, did not attempt to define what that standard requires. Thus, even where section 63G-4-403(4)(g) implies a "substantial evidence" standard on appeal, for example, we must look outside UAPA to determine what that standard means.

¶21 But most agency actions listed in section 63G-4-403(4) do not imply a standard of review. Absent this implication, we conclude that the Legislature intended our traditional standards of review to apply. This category of agency action includes section 63G-4-403(4)(d), which allows us to grant relief when an "agency

---

[42] *See id.* § 63G-4-403(2)(a) (directing "the petitioner [to] file a petition for review of agency action with the appropriate appellate court in the form required by the appellate rules of the appropriate appellate court"); *id.* § 63G-4-403(2)(b) (stating that "[t]he appellate rules of the appropriate appellate court shall govern all additional filings *and proceedings* in the appellate court" (emphasis added)).

[43] *Id.* § 63G-4-403(4)(g).

has erroneously interpreted or applied the law." We stated in *Morton* that the term "erroneous" connotes a correctness standard for both interpretations and applications of law.[44] But we now conclude that subsection (4)(d) does not imply a standard of review. While that provision empowers courts to grant relief when an agency commits an "error" in interpreting or applying the law, the term "erroneous" in this context does not imply a standard of review. Rather, the term simply means "mistaken," indicating that we may grant relief when an agency misinterpreted or misapplied the law.[45] Sections 63G-4-403(4)(a)–(f) and (h)(ii) fall into this category as well. For this category of agency actions, we are free to apply our traditional approach for selecting an appropriate standard of review.

¶22 Based on the above plain-language analysis, we conclude that section 63G-4-403 does not—contrary to our decision in *Morton*[46]—incorporate standards of review for each agency action listed in subsection (4). Accordingly, we overrule *Morton* as far as it is inconsistent with this conclusion. Going forward, the appropriate standard of review of final agency actions will depend on the type of action in question. In some instances, as discussed above, section 63G-4-403 will have characterized the action in such a way that the applicable standard of review will be obvious. But even there, we must turn to our case law to determine how that standard applies. For other agency actions, the applicable standard of review will depend on the nature of the agency action and whether it can be characterized as a question of law, a question of fact, or a mixed question of law and fact.[47] Below, we apply this analysis to Mr. Murray's case to determine the appropriate standard of review on appeal.

---

[44] *Morton*, 814 P.2d at 587.

[45] *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 423 (1988) (defining "erroneous" as "containing or characterized by error . . . [or] mistaken").

[46] *Morton*, 814 P.2d at 584.

[47] *See, e.g., Dep't of Admin. Servs. v. Pub. Serv. Comm'n*, 658 P.2d 601, 608–10 (Utah 1983) (discussing the three traditional standards of review applicable to allegations of agency error).

## II. WE CONCLUDE THAT MR. MURRAY'S CLAIM PRESENTS A TRADITIONAL MIXED QUESTION OF LAW AND FACT AND THAT, ACCORDINGLY, THE COMMISSION'S AUTHORITY TO APPLY THE LAW IN THIS CASE IS NOT A DISCRETIONARY ACTION WARRANTING AN "ABUSE OF DISCRETION" STANDARD OF REVIEW UNDER UAPA

¶23 The appropriate standard of review in this case depends on the type of agency action alleged to be erroneous and whether that action incorporates a specific standard of review under section 63G-4-403(4) of UAPA. Mr. Murray contends that the Commission misapplied the Utah Workers' Compensation Act, specifically section 34A-2-401 of the Utah Code,[48] to the facts of his case. His claim for relief accordingly falls under section 63G-4-403(4)(d), which requires us to determine whether the Commission "erroneously . . . applied the law." We concluded above that subsection (4)(d) is not the type of agency action that is characterized in such a way as to imply a specific standard of review. We are thus free to apply our traditional approach in selecting the appropriate standard of review for Mr. Murray's claim.

¶24 The first question under this approach is whether the Commission's decision "qualifies as a finding of fact, a conclusion of law, or a determination of a mixed question of law and fact."[49] Mixed questions "involv[e] application of a legal standard to a set of facts unique to a particular case."[50] Indeed, in the agency context, we have stated that we "use[] the terms mixed question of fact and law and application of the law interchangeably."[51] Accordingly, Mr. Murray's claim that the Commission misapplied the law to the facts of his case presents a traditional mixed question of law and fact.

---

[48] This statute provides benefits for employees injured "by accident arising out of and in the course of the employee's employment." UTAH CODE § 34A-2-401(1).

[49] *Manzanares v. Byington (In re Adoption of Baby B.)*, 2012 UT 35, ¶ 40, __P.3d__.

[50] *Id.* ¶ 42.

[51] *Morton Int'l, Inc. v. Tax Comm'n*, 814 P.2d 581, 586 n.23 (Utah 1991).

¶25 But the court of appeals determined that section 34A-1-301 of the Labor Commission Act "constitutes an express grant of authority" for the Commission "to apply the law in workers' compensation cases."[52] That provision provides that "[t]he commission has the duty and the full power, jurisdiction, and authority to determine the facts and apply the law in this chapter or any other title or chapter it administers." Thus, the court of appeals concluded that under section 63G-4-403(4)(h)(i) of UAPA, it must review the Commission's decision to deny Mr. Murray benefits for an abuse of discretion.[53] We disagree.

¶26 The court of appeals' decision was understandable in light of our past decisions concluding that we review an agency's decision for an abuse of discretion when the Legislature has granted the agency discretion to interpret or apply the law.[54] We last considered a delegation of discretion in *LPI Services v. McGee.*[55] There we recognized that "[t]he [L]egislature may grant an agency discretion, either explicitly or implicitly, to interpret specific statutory terms."[56] We have found implicit delegations of discretion where "the operative terms of a statute are broad and generalized" or "there is more than one permissible reading of the statute" and no basis in our rules of construction to prefer one interpretation to another.[57]

¶27 We have not clearly articulated what constitutes an explicit delegation of discretion, although we have offered examples. In *LPI Services*, we suggested that the Legislature explicitly delegated discretion by mandating that "[t]he [Labor] [C]ommission shall establish rules regarding part-time work and offset" to account for a permanently disabled employee's income

---

[52] *Murray v. Labor Comm'n*, 2012 UT App 33, ¶ 15, 271 P.3d 192.

[53] *Id.* ¶ 27.

[54] *See, e.g.*, *Morton*, 814 P.2d at 587 (analyzing UTAH CODE § 63G-4-403(h)(i)).

[55] 2009 UT 41, 215 P.3d 135.

[56] *Id.* ¶ 8.

[57] *Id.* ¶¶ 8, 9 (internal quotation marks omitted).

from medically appropriate part-time work.[58] The court of appeals declined, however, to limit explicit delegations of discretion to only those instances where the Legislature directs an agency to define a statutory term by regulation.[59] It instead adopted a broader approach, concluding that "an explicit grant of discretion can be found when a statute specifically authorizes an agency to interpret or apply statutory language."[60] The court of appeals has explained that "[w]hen the [L]egislature focuses on a specific statutory term and delegates to the agency the duty to either interpret or apply the term, . . . the agency necessarily is required to interpret the statutory language."[61]

¶28 The above approach to identifying delegations of discretion has proved difficult to apply.[62] And we now conclude that it is inconsistent with the interpretation of section 63G-4-403(4) announced above. Specifically, under the plain language of section 63G-4-403(4), it is inaccurate to say that "authority" means "discretion," as the court of appeals has done. There is no question that section 34A-1-301 of the Labor Commission Act "constitutes an express grant of authority" for the Commission "to apply the law in workers' compensation cases."[63] But this grant of

---

[58] *Id.* ¶ 8 (first alteration in original) (internal quotation marks omitted).

[59] *King v. Indus. Comm'n*, 850 P.2d 1281, 1291 (Utah Ct. App. 1993), *superseded by statute,* UTAH CODE § 34A-1-301, *on other grounds*, *as recognized in Murray*, 2012 UT App 33, ¶¶ 17–18.

[60] *Id.* at 1287.

[61] *Employers' Reinsurance Fund v. Indus. Comm'n*, 856 P.2d 648, 655 (Utah Ct. App. 1993) (Billings & Russon, JJ., concurring in the result) (articulating the holding of the court as to the standard of review), *superseded by statute,* UTAH CODE § 34A-1-301, *on other grounds*, *as recognized in Murray*, 2012 UT App 33, ¶¶ 17–18.

[62] *See, e.g.*, *Niederhauser Ornamental & Metal Works Co. v. Tax Comm'n*, 858 P.2d 1034, 1037 (Utah Ct. App. 1993) (recognizing that "[d]iscerning an implied or explicit grant of discretion from the governing statute is key" to selecting the appropriate standard of review but complaining that doing so "has become an increasingly complex endeavor").

[63] *Murray*, 2012 UT App 33, ¶ 15.

authority does not turn an agency's application or interpretation of the law into the type of action that would warrant an "abuse of discretion" standard of review under section 63G-4-403(4)(h)(i).

¶29 We have already recognized in past decisions that "an administrative grant to administer a statute is not to be confused with a grant of discretion to interpret the statute."[64] This is because "all agencies are necessarily granted authority by statute to administer portions of the code."[65] We now go a step further and conclude that, for an "abuse of discretion" standard to apply on appeal, the agency action under review must involve "discretion." Only then can we properly review the action for an "abuse of discretion," as required by the plain language of section 63G-4-403(4)(h)(i).

¶30 This conclusion requires us to determine whether the Commission's decision in this case—a mixed finding of law and fact—is the type of decision that involves discretion. While the term "discretion" within the law defies precise definition,[66] the Legislature's use of the term in section 63G-4-403(4)(h)(i) requires us to assign it at least some characteristics. Commentators have recognized that a basic feature of discretion is "choice."[67] That is, a discretionary decision involves a question with a range of "acceptable" answers, some better than others, and the agency or trial court is free to choose from among this range without regard to what an appellate court thinks is the "best" answer.[68] We agree

---

[64] *Airport Hilton Ventures, Ltd. v. Tax Comm'n*, 1999 UT 26, ¶ 7 n.4, 976 P.2d 1197 (citing approvingly to *Belnorth Petroleum Corp. v. Tax Comm'n*, 845 P.2d 266, 268 n.5 (Utah Ct. App. 1993)).

[65] *Belnorth Petroleum Corp.*, 845 P.2d at 268 n.5.

[66] *See State v. Pena*, 869 P.2d 932, 937 (Utah 1994) (stating that "the term 'abuse of discretion' has no tight meaning"); *see also* Maurice Rosenberg, *Judicial Discretion of the Trial Court, Viewed from Above*, 22 SYRACUSE L. REV. 635, 635 (1971) ("To speak of discretion in relation to law is to open a thousand doorways to discussion.").

[67] *E.g.*, Ronald R. Hofer, *Standards of Review—Looking Beyond the Labels*, 74 MARQ. L. REV. 231, 246 (1991).

[68] *See* Hofer, *supra* ¶ 30 n.67, at 246 (characterizing discretionary decisions "as involving not right or wrong, but

(continued)

with this general characterization of discretion. Accordingly, we conclude that whenever the Legislature directs an agency to engage in this type of decision-making, regardless of whether it does so explicitly or implicitly, it has delegated discretion to the agency within the meaning of section 63G-4-403(4)(h)(i).

¶31 An example of such a delegation can be found in section 54-3-2 of the Utah Code relating to schedules of utility rates and classifications. That section requires public utilities to file with the Public Service Commission (PSC) "schedules showing all rates, tolls, rentals, charges, and classifications collected or enforced."[69] It further provides that "[t]he commission shall have power, in its discretion, to determine and prescribe, by order, changes in the form of the schedules referred to in this section as it may find expedient."[70] Under this provision, the PSC has both authority and discretion to change the form of schedules. Its authority derives from the Legislature's grant of "power" while its discretion comes from the type of decision-making the Legislature directed the PSC to engage—not the phrase "in its discretion."

¶32 In order to properly "determine and prescribe, by order, changes in the form of the schedules," the PSC need only find it "expedient" to do so. There are a range of "acceptable" fact scenarios that the PSC could either accept or reject as being expedient without risking reversal by an appellate court. And the appellate court will review the PSC's discretionary decision for an "abuse of discretion" to ensure that it falls within the bounds of reasonableness and rationality.[71] Reasonableness, in turn, is

---

better or worse" (internal quotation marks omitted)); Maurice Rosenberg, *Appellate Review of Trial Court Discretion*, 79 F.R.D. 173, 176 (1978) (stating that, for discretionary decisions, "appellate courts will allow the trial judge wide scope for decision, free from normal restraints that apply to legal determinations" and that "[t]he trial judge acting in discretion is granted a limited right to be wrong, by appellate court standards, without being reversed").

[69] UTAH CODE § 54-3-2(1).

[70] *Id.* § 54-3-2(3).

[71] *See generally Dep't of Admin. Servs. v. Pub. Serv. Comm'n*, 658 P.2d 601, 610–11 (Utah 1983).

essentially a test for logic and completeness rather than the correctness of the decision.[72]

¶33 Admittedly, our characterization of discretion is broad and in need of refinement through application in future cases. But it adequately demonstrates that the Commission's action in this case did not involve discretion. As we have already stated, a mixed question arises when an agency or lower court must apply "a legal standard to a set of facts unique to a particular case."[73] Importantly, the question of whether a set of facts falls within a legal standard is itself a question of law.[74] And like all questions of law, the question of whether certain facts fulfill a legal standard has a single "right" answer in terms of the trajectory of the law.[75] Our precedent on mixed questions simply reflects the idea that we, as an appellate court, are not always in the best position to say what that "right" answer is.[76] Thus, in the context of mixed questions, we sometimes afford deference to a trial court's decision as a matter of institutional competency.[77] But the trial

---

[72] *Id.* at 611 (discussing the "abuse of discretion" standard and stating that "[t]he test of rationality may be simply a matter of logic or completeness").

[73] *In re Adoption of Baby B.*, 2012 UT 35, ¶ 42.

[74] *See Drake v. Indus. Comm'n*, 939 P.2d 177, 181 (Utah 1997) (recognizing "that the legal effect of . . . facts is the province of the appellate courts, and no deference need be given a trial court's resolution of such questions of law" (internal quotation marks omitted)); *see also* Hofer, *supra* ¶ 30 n.66, at 246 ("In a mixed question, the usual formulation describing the nexus between fact and law is that whether the facts fulfill a particular legal standard is itself a question of law." (internal quotation marks omitted)).

[75] Hofer, *supra* ¶ 30 n.66, at 236–37 (characterizing "law" as "rules and standards [that] optimally should be generally and uniformly applicable to all persons of like qualities and status and in like circumstances, and should be capable of being predicated in advance and which being so predicated, await proof of the facts necessary for their application" (footnote omitted) (internal quotation marks omitted)).

[76] *See In re Adoption of Baby B.*, 2012 UT 35, ¶ 42.

[77] *State v. Levin*, 2006 UT 50, ¶ 19, 144 P.3d 1096.

court does not have discretion to reach anything other than the "right" answer. In other words, "discretion" and "deference" are distinct concepts.[78]

¶34 Accordingly, we conclude that Mr. Murray's claim constitutes a traditional mixed question of law and fact and that the Commission's authority to apply the law in this case is not the type of discretionary action that warrants an "abuse of discretion" standard of review under our plain-language interpretation of UAPA.

## III. ALTHOUGH THE COURT OF APPEALS APPLIED THE WRONG STANDARD OF REVIEW IN THIS CASE, ITS ERROR WAS HARMLESS, AND WE AFFIRM ITS DECISION TO UPHOLD THE COMMISSION'S ORDER RELATING TO MR. MURRAY'S FAILURE TO ESTABLISH LEGAL CAUSE

¶35 Having determined that the Commission's decision in this case constitutes a mixed finding of law and fact, we now consider (A) the amount of deference, if any, we should afford its finding on appeal, and (B) whether the court of appeals erred in concluding that Mr. Murray failed to establish legal cause.

### A. The Commission's Decision was "Law-Like" and Warrants a Nondeferential Standard of Review

¶36 The standard of review we apply when reviewing a mixed question can be either deferential or nondeferential, depending on the following three factors:

> (1) the degree of variety and complexity in the facts to which the legal rule is to be applied; (2) the degree to which a trial court's application of the legal rule relies on "facts" observed by the trial judge, such as a witness's appearance and demeanor, relevant to the application of the law that

---

[78] We recognize that our case law has often conflated the distinct concepts of "deference" and "discretion." *See, e.g.*, *Drake*, 939 P.2d at 182 (analyzing a mixed question and stating that "the legal standard is one that conveys a measure of *discretion* to [the Commission] when applying that standard to a given set of facts" (alterations in original) (emphasis added) (internal quotation marks omitted)). But we clarify that in the context of UAPA the two concepts must be treated separately.

cannot be adequately reflected in the record available to appellate courts; and (3) other policy reasons that weigh for or against granting [deference] to trial courts.[79]

¶37 We recently analyzed these factors in *In re Adoption of Baby B*.[80] There we recognized that the deference granted under the factors "rests on the notion that the mixed finding is *not* 'law-like' because it does not lend itself to consistent resolution by a uniform body of appellate precedent" or "*is* 'fact-like' because the trial court is in a superior position to decide it."[81]

¶38 We stated that an example of a mixed finding that warrants deference on appeal is a finding of negligence in a personal injury case.[82] A negligence finding is not "law-like" in that it is so factually complex that "no rule adequately addressing the relevance of all [the] facts can be spelled out."[83] And it is "fact-like" because a trial court will often "be affected by [its] observation of a competing witness's appearance and demeanor on matters that cannot be adequately reflected in the record available to appellate courts," thus placing it in a superior position to assess credibility.[84]

¶39 On the other hand, "a finding that a common set of recurring law enforcement practices qualifies as a 'reasonable' search or seizure" would warrant nondeferential review.[85] Such a finding is "law-like" in that law enforcement and the general public need "a consistent rule established by set appellate precedent."[86] And it is not "fact-like" because the ultimate

---

[79] *State v. Levin*, 2006 UT 50, ¶ 25, 144 P.3d 1096 (internal quotation marks omitted).

[80] *Manzanares v. Byington (In re Adoption of Baby B.)*, 2012 UT 35, __P.3d__.

[81] *Id.* ¶ 42.

[82] *Id.* ¶ 43.

[83] *Id.* (internal quotation marks omitted).

[84] *Id.* (internal quotation marks omitted).

[85] *Id.* ¶ 44.

[86] *Id.*

determination will often rest on the "general reasonableness" of the facts rather than "the demeanor or credibility" of witnesses.[87]

¶40 Based on the above principles, we conclude that the Commission's decision here that Mr. Murray failed to establish legal cause warrants nondeferential review. Its decision was "law-like" in that, as in the context of a reasonable search or seizure, the Commission had to decide whether a set of facts qualified as "unusual" for purposes of determining legal cause. It is true that this can potentially be a fact-intensive inquiry. Indeed, we have generally recognized that "whether or not [an] injury arises out of or within the scope of employment depends upon the particular facts of each case."[88] But in this case the facts are not at issue. So the ultimate question is the legal effect of the facts rather than witness credibility or demeanor. In the context of a legal cause analysis for preexisting injuries, the legal effect of a given set of facts depends on their "unusualness." And "unusualness"—like "reasonableness"—is an objective legal standard that we are in a better position to analyze than the Commission.[89]

*B. Even Applying a Nondeferential Standard of Review, We Agree with the Court of Appeals that the Commission Correctly Concluded that Mr. Murray's Employment Activity was not "Unusual"*

¶41 Although the court of appeals applied the wrong standard of review in this case, its error was harmless. "[H]armless error is an error that is sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the proceedings."[90] We conclude that even if the court of appeals had applied a nondeferential standard of review, its decision regarding the Commission's order would be the same.

¶42 The court of appeals concluded that Mr. Murray failed to establish legal cause after considering "[Mr.] Murray's exertion as well as the working conditions that [Mr.] Murray faced at the time

---

[87] *Id.*

[88] *Drake v. Indus. Comm'n*, 939 P.2d 177, 182 (Utah 1997) (internal quotation marks omitted).

[89] *Id.* at 181.

[90] *H.U.F. v. W.P.W.*, 2009 UT 10, ¶ 44, 203 P.3d 943 (alteration in original) (internal quotation marks omitted).

of the accident—including the outside force to which [Mr.] Murray reacted."[91] The court recognized that the standard from our decision in *Allen v. Industrial Commission*[92] required Mr. Murray to demonstrate an "unusual or extraordinary exertion."[93] But it concluded that there was nothing unusual about the exertion required to withstand an unexpected five- to six-inch wave while standing "in an awkward position on an unsteady surface [and] leaning over to unlock a cable while wearing a fifteen-pound service belt and one-pound life jacket."[94]

¶43 But Mr. Murray contends that our holding in *Allen* applies only to "intentional and exertional workplace activities." His injury, in contrast, was "for the most part . . . the result of an unexpected and sudden impact or force which knocked and threw him off balance—an impact against which he mostly reacted reflexively." Mr. Murray argues that for injuries caused by nonexertional factors, it does not make sense to require an unusual exertion. We disagree with Mr. Murray's view of the *Allen* standard.

¶44 The Utah Workers' Compensation Act provides that an employee injured "by accident arising out of and in the course of the employee's employment . . . shall be paid . . . compensation for loss sustained on account of the injury."[95] We have recognized that "[t]his statute creates two prerequisites for a finding of a compensable injury."[96] "First, the injury must be 'by accident.' Second, the language 'arising out of [and] in the course of employment' requires that there be a causal connection between the injury and the employment."[97] Only the second prerequisite—causal connection—is at issue here.

---

[91] *Murray v. Labor Comm'n*, 2012 UT App 33, ¶ 35, 271 P.3d 192.

[92] 729 P.2d 15 (Utah 1986).

[93] *Murray*, 2012 UT App 33, ¶ 30 (internal quotation marks omitted).

[94] *Id.* ¶ 35; *see also id.* ¶¶ 36–37.

[95] UTAH CODE § 34A-2-401(1).

[96] *Allen*, 729 P.2d at 18.

[97] *Id.*

¶45 We have adopted a two-part test for establishing a causal connection. Under that test, a claimant must establish that the conditions or activities of his job were both the medical cause and the legal cause of his injury.[98] In this case, the only dispute concerns whether Mr. Murray's employment activities constituted the legal cause of his injury. If an employee does not have a preexisting condition that causally contributed to his injury, then the medical and legal causation requirements are one and the same, and the employee need only prove medical causation.[99]

¶46 But medical and legal causation diverge for an employee with a causally contributing preexisting condition, and here it is undisputed that Mr. Murray had such a condition. In *Allen*, we held that to prove legal causation, an employee with a preexisting condition must show that "the employment contributed something substantial to increase the risk he already faced in everyday life because of his condition."[100] We recognized that this heightened showing of legal cause is "necessary to distinguish those injuries which . . . coincidentally occur at work because a preexisting condition results in symptoms which appear during work hours without any enhancement from the workplace."[101]

¶47 Our decision in *Allen* also recognized that the required workplace enhancement is "usually supplied by an exertion greater than that undertaken in normal, everyday life."[102] *Allen*'s focus on "exertions" is understandable given that the facts of that case involved clear exertions—moving and lifting.[103] But our decision in *Allen* ultimately considered the totality of the circumstances, including the employee's exertions and the workplace conditions. For example, in *Allen*, the activity that precipitated the employee's injury was "moving and lifting several piles of dairy products."[104] But we made clear that

---

[98] *Id.* at 25.

[99] *Id.* at 26.

[100] *Id.* at 25.

[101] *Id.*

[102] *Id.*

[103] *Id.* at 28.

[104] *Id.*

consideration of this activity must account for "how many crates [of product] were moved . . . , the distance the crates were moved, the precise weight of the crates, and the size of the area in which the lifting and moving took place."[105] The court of appeals applied this approach in *American Roofing Co. v. Industrial Commission*.[106] There the precipitating employment activity involved "unload[ing] a thirty pound bucket of debris out of [a] truck."[107] But the court of appeals' consideration of the activity included "the weight, together with the manner in which [the employee] lifted the bucket and the fact that the bucket snagged."[108] Accordingly, in determining whether the employment activity that precipitated Mr. Murray's injury was "unusual" under *Allen*, we must consider the totality of the circumstances.

¶48 "Unusualness" is an objective standard. We compare the activity that precipitated the employee's injury with "the usual wear and tear and exertions of nonemployment life."[109] The focus is on "what typical nonemployment activities are generally expected of people in today's society, not what this particular claimant is accustomed to doing."[110] This question involves two steps: first, we must characterize the employment-related activity that precipitated the employee's injury, taking into account the totality of the circumstances; and second, we must determine whether this activity is objectively unusual or extraordinary.[111]

¶49 While the first step is a matter of fact,[112] the parties in this case do not dispute the circumstances surrounding Mr. Murray's accident. Mr. Murray bent over the edge of the boat, the height of which was slightly above his knees, at a thirty-five to forty degree

---

[105] *Id.*

[106] 752 P.2d 912 (Utah Ct. App. 1988).

[107] *Id.* at 913.

[108] *Id.* at 915.

[109] *Allen*, 729 P.2d at 26.

[110] *Id.*

[111] *Price River Coal Co. v. Indus. Comm'n*, 731 P.2d 1079, 1082 (Utah 1986).

[112] *Id.*

angle. He was holding the cable and the lock in his left hand and entering the combination with his right. At the time, Mr. Murray was wearing a fifteen-pound service belt and a one-pound inflatable life jacket. As he was in this position, a five- to six-inch wave from another boat's wake unexpectedly rocked the patrol boat, causing him to lose his balance.

¶50 Mr. Murray steadied himself by shifting his right foot against the side of the boat, grabbing the side of the boat with his right hand, and twisting his body. He immediately felt a slight pain in his lower back, but he nevertheless went on patrol. Accordingly, as the court of appeals recognized, the activity that precipitated Mr. Murray's injury was the act of steadying himself.[113] And we must account for the fact that he was bent over the edge of the boat at a thirty-five to forty degree angle, that he was wearing a fifteen-pound service belt and a one-pound inflatable life jacket, and that the five- to six-inch wave that hit his boat was unexpected.

¶51 Having characterized the totality of Mr. Murray's precipitating activity, we continue to the next step and determine whether Mr. Murray's exertion and surrounding circumstances were objectively "unusual or extraordinary."[114] Utah courts have deemed employment activities to be "unusual" or "extraordinary" when they require an employee to endure jumping, lifting great weight, or repetition. For example, in *Miera v. Industrial Commission*, we concluded that an employee's "jumps into an eight-foot hole from a four-foot platform at thirty-minute intervals" was unusual.[115] And in *Crosland v. Industrial Commission*, the court of appeals recognized that moving a two-hundred-pound sign qualified as an unusual activity.[116] Likewise, in *Stouffer Foods Corp. v. Industrial Commission*, the court of appeals concluded that continually gripping high pressure hoses was unusual.[117] But in *Schreiber v. Labor Commission*, the court of appeals determined that there was nothing unusual about the

---

[113] *Murray*, 2012 UT App 33, ¶¶ 35–36.

[114] *Price River Coal Co.*, 731 P.2d at 1082.

[115] 728 P.2d 1023, 1024–25 (Utah 1986).

[116] 828 P.2d 528, 530 n.3 (Utah Ct. App. 1992).

[117] 801 P.2d 179, 182–84 (Utah Ct. App. 1990).

force of a rubber ball that injured a playground supervisor when it hit her in the back.[118] The court noted that "the direct force of the ball was relatively minor, comparable to the jostling one frequently encounters in crowds."[119]

¶52 While the facts of these cases are not directly on point with Mr. Murray's, they exhibit the objective standard we must apply in this case, which is to determine "what typical nonemployment activities are generally expected of people in today's society."[120] People are generally not expected to lift two-hundred pounds, jump into eight-foot holes, or continually grip a high pressure hose. But they are expected to withstand minor force.

¶53 In light of the above analysis, the court of appeals correctly upheld the Commission's order in this case. The totality of Mr. Murray's precipitating activity—both exertional and nonexertional—was not unusual. As the court of appeals recognized, the totality of Mr. Murray's accident is comparable to nonemployment activities generally expected in today's society.[121] To borrow the court of appeals' example, people are generally expected to travel in everyday life. They are expected to carry luggage or bags often heavier and less secure than Mr. Murray's service belt and life jacket. And they are generally expected to encounter bumpy rides in planes or buses and maintain and regain their balance in the process. The unexpected force Mr. Murray experienced, his awkward position, and the service belt and jacket he was wearing when the small wave rocked his boat were not unusual given the unexpected rigors we expect people to endure while traveling with clumsy luggage. We agree with the court of appeals that the "whole" of Mr. Murray's accident "entailed nothing unusual or extraordinary that could be presumed to have contributed something substantial to increase the risk of injury."[122]Accordingly, even applying a nondeferential

---

[118] 1999 UT App 376, 1999 WL 33244768, at *1.

[119] *Id.* (internal quotation marks omitted).

[120] *Allen*, 729 P.2d at 26.

[121] *Murray*, 2012 UT App 33, ¶ 36.

[122] *Id.* ¶ 38.

Opinion of the Court

standard of review, we affirm the court of appeals' decision to uphold the Commission's order denying benefits in this case.

**CONCLUSION**

¶54 The court of appeals erred in applying an "abuse of discretion" standard of review to the Commission's decision denying Mr. Murray compensation benefits. The Commission's decision constituted a mixed finding of law and fact that did not involve discretion. Under the plain language of UAPA, we apply our traditional approach to reviewing the Commission's mixed finding. But even under a nondeferential standard of review, Mr. Murray failed to establish that his boat accident, rather than his preexisting back condition, was the legal cause of his injury. We therefore uphold the court of appeals' ultimate decision to deny him compensation benefits.

———————